## Citizens Trust & Guaranty Company v. Peebles Paving Brick Company, et al.

(Decided March 6, 1917.)

### Appeal from Jefferson Circuit Court
### (Chancery Branch, First Division).

1. Contracts—Party for Whose Benefit Contract Is Made May Sue On It.—A party for whose benefit a contract is made may bring suit on it, although he is not a party to the contract.

2. Contracts—Liability of Contractor Who Has Notice of Claim Against Subcontractor.—Where the principal contractor for street improvements had notice of a claim against the subcontractor, at a time when he had funds in his hands due the subcontractor sufficient to pay the claim, the claimant could proceed directly against the principal contractor to recover the amount of his claim, admittedly just.

3. Action—Action on Contract by Way of Garnishee.—A creditor who has a claim against a subcontractor which the principal contractor is obligated to pay, may bring a suit against the principal contractor and the subcontractor to recover the amount of his claim, and in the same suit attach in the hands of the principal contractor funds due the subcontractor.

WEHLE & WEHLE for appellant.

BARRET, ALLEN & ATTKISSON for appellee, J. B. Speed & Co.

FURLONG, WOODBURY & FURLONG for appellee, Peebles Paving Brick Co.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming on original appeals and reversing on cross-appeal.

There are two appeals on this record by the Citizens Trust & Guaranty Co., one being prosecuted from a judgment in favor of Peebles Paving Brick Co., and the other from a judgment in favor of J. B. Speed & Co. There is also a cross-appeal by the Peebles Co. against the Citizens Trust & Guaranty Co.

In the spring of 1910 a firm of contractors known as the Staebler Co. entered into a contract with the city of Louisville to build certain streets, and the Citizens Trust & Guaranty Co., of West Virginia, was the surety of the Staebler Co. for the performance of the contract. Shortly after the contract was let to the Staebler Company, but before it had constructed any streets, it went into bankruptcy, and it was then incumbent upon the guaranty company to meet its obligations as surety by constructing the streets that the Staebler Company had contracted to construct.

In September, 1910, the guaranty company, for the purpose of discharging its obligation to the city, entered into a contract with one Meredith, of Terre Haute, Ind., to build these streets and assume all the obligations of the Staebler Company under its contract with the city, and the National Surety Co. became the surety for Meredith that he would perform his contract with the guaranty company. At the time the contract was made with Meredith, and perhaps for some time before that, one, Gauvreau, was the general agent in Kentucky of the guaranty company and had charge of all its business in the city of Louisville, including the obligations incurred in the contract for the construction of the streets.

After Meredith had assumed the contract to construct for the guaranty company the streets, he purchased from the Peebles Paving Brick Co. a lot of brick to be used in constructing the streets, and on March 29, 1911, for the purpose of paying the debt due by him to the Peebles Company, he wrote to the guaranty company the following letter: "This is authority for you to pay to the Peebles Paving Brick Co., Portsmouth, Ohio, $3,980.98 balance due them, out of or from warrants received on work now in course of construction."

On April 27, 1911, Gauvreau, for the guaranty company, acknowledged the receipt of this order in the following letter written to the Peebles Paving Brick Co.: "I acknowledge receipt of an order signed by F. C.

Meredith, directing me to pay your company the sum of $3,980.98 from the proceeds of apportionment warrants for improvement of streets in Louisville, which warrants I am collecting for Mr. Meredith.

"I expect that the warrants for Stratton Avenue will be issued the early part of next week, and I hope that within a week or ten days after I have these warrants in hand, I will be able to pay you a substantial amount on account."

On November 10, 1911, the Peebles Co. brought suit against Meredith and the guaranty company to recover the amount Meredith had authorized the guaranty company to pay and at the same time it secured a general order of attachment for the purpose of securing any property or funds owned by Meredith in the hands of the guaranty company.

After various motions had been made, pleadings filed, and the evidence taken, the lower court, in February, 1915, after finding that the order given by Meredith to the Peebles Co., in March, 1911, was an assignment to the Peebles Co. of the amount mentioned in the order and a direction to the guaranty company to pay the Peebles Co. that amount, and after also finding that it accepted the assignment in the letter of April, 1911, and assumed the duty of paying the amount, and that the attachment secured by the Peebles Co. constituted a lien upon the property, which consisted of money and apportionment warrants due Meredith in the hands of the guaranty company, and that there was in the hands of the guaranty company at the time this assignment was accepted, and when the attachment was executed, money and property more than sufficient to pay the $3,980.98 due the Peebles Co., entered a judgment against the guaranty company directing it to pay the Peebles Co. this sum. From that judgment the guaranty company prosecutes this appeal.

The Peebles Co. also prosecutes a cross-appeal because the lower court refused to give it judgment for interest on this sum from the date of the assignment by Meredith, and its costs.

In July, 1911, J. B. Speed & Co., who had furnished cement, stone and sand to Meredith on his contract for the construction of the streets, brought suit against him on an account for $2,043.60 and obtained an attachment against his property and garnisheed funds and city im-

provement warrants in the hands of the guaranty company. Meredith, being a non-resident, was proceeded against by a warning order, the attachment against the guaranty company being served on its local agent, Gauvreau. In this case various motions were made, pleadings filed and evidence taken, and finally in February, 1915, there was a judgment against the guaranty company in favor of J. B. Speed & Co. From this judgment the guaranty company prosecutes an appeal.

It may be here noticed that the evidence shows that there were in the hands of the guaranty company at the date of its acceptance of Meredith's order for the benefit of the Peebles Co., and at the time the suit was brought and the attachment obtained by Speed & Co., or came into its hands soon thereafter, funds and city apportionment warrants amply sufficient to satisfy the claims of the Peebles Co. and Speed & Co., and no question is raised as to the justness or correctness of these claims.

It may also be here stated, as a matter of controlling importance in determining the rights of the parties to this appeal, that when the Staebler Co. went into bankruptcy and abandoned the contract it had entered into with the city to construct the streets, the guaranty company as the surety of the Staebler Co. assumed, as it was obliged to do, the performance of this contract. In other words, it took the place of the Staebler Co. and agreed to do what it had agreed to do. Meredith was really a subcontractor employed by the guaranty company to do for it the work that the Staebler Co. under its contract with the city had agreed to do. This is clearly shown by the stipulations in the contract made in September, 1910, between the guaranty company and Meredith. In this contract, in which the guaranty company was the party of the first part and Meredith, a citizen of Indiana, party of the second part, it was set out among other things that:

"Whereas, the party of the first part was surety for said Staebler Co. on said contracts, thereby guaranteeing the performance thereof by said Staebler & Co., and said Staebler Co. has failed to perform its said contracts and the party of the first part is entitled to all the rights of said Staebler Co. under said contracts, and also has all of the liabilities of said Staebler Co. under said contract, and said Staebler Co. has assigned all its said

rights to the party of the first part, which assignment has been recognized and approved by the city of Louisville through its authorized officials:

"For value received, the party of the first part hereby assigns to the party of the second part, subject to and excepting the rights of the party of the first part as hereinafter set out, all its interest and rights under said contracts with the city of Louisville, and hereby agrees that it will endorse and transfer to the party of the second part the apportionment warrants to be issued by the city of Louisville under said contracts, subject, however, to the provisions hereinafter made.

"In consideration of the promises and the agreements herein of the party of the first part, the party of the second part hereby agrees and undertakes to complete in every particular and perform the said contract above referred to made by the Staebler Co. . . . .

"The party of the first part will take prompt and all necessary steps to procure the issue by the city of Louisville of the warrants in payment for said work, and it will make the deposit of ten per cent. of the total contract prices, provided for by said contracts with the city of Louisville, to be deposited before the warrants herein referred to are issued; and the party of the first part agrees that during the progress of the work herein referred to it will advance to the party of the second part such sums of money as may be needed by him in carrying on said work not exceeding eighty-five per cent. of the value of the work done under said contracts, estimated according to the prices stipulated in said contract, and eighty-five per cent. of the cost of material to be used in said work when delivered at the site of said work, it being hereby provided that the party of the first part may retain as security for the payment of such advancements the warrants issued under said contracts to the extent and amount equal to the amount of such unpaid advancements, the cost of collection of such warrants so retained to be charged to the party of the second part."

For the faithful performance of this contract Meredith executed a bond with the National Surety Co. as his surety, and in clause four of this bond it was stipulated that "If at any time during the prosecution of the work specified in said contract to be performed, there come to the notice or knowledge of the obligee—the

guaranty company—the fact that any claim for labor performed or for materials or supplies furnished the said principal in or upon said work remains unpaid or that any lien or notice of lien for such work, materials or supplies has been filed or served, the obligee shall withhold payment from the principal of any moneys due or to become due to the principal under said contract until the payment of such claim or cancellation and discharge of such lien or notice of lien, if any, and will so notify the company, giving a statement of the particular facts and amount of each such claim, lien or notice of lien.''

As applicable to both appeals, the record shows these facts: That the guaranty company was the real contractor with the city and Meredith merely a subcontractor employed by it to do the work; that all apportionment warrants issued by the city in payment for street construction were made payable to the guaranty company and were delivered to it; that the guaranty company had in its hands, when the order of Meredith in favor of the Peebles Co. was delivered to it, and when it had notice of the claim of Speed & Co. through the attachment, either money derived from warrants or warrants representing money amply sufficient to pay the Peebles Co. claim and also to pay the claim of Speed & Co.; or, at any rate, afterwards and long before the judgments there came into its possession city warrants more than sufficient to pay these claims and all other valid claims against Meredith. Under these facts, it was the duty of the guaranty company not only as the real contractor to pay these claims, admittedly just, but, in addition to this, it agreed in the contract between it, Meredith and the National Surety Co., and for the protection of the surety company, to retain city warrants sufficient to pay all claims against Meredith of which it had notice.

So that entirely aside from the right of persons who had furnished material to Meredith for use in the construction of the streets to proceed directly against the guaranty company after it had notice of the claims against Meredith and funds in its hands sufficient to pay them, it became liable to such creditors, after notice of their claims, under its contract with the National Surety Co., which was made for the benefit of the creditors of Meredith, and upon which they had a right to bring suit

against the guaranty company. In other words, the contract between Meredith, the guaranty company and the National Surety Co. was made for the benefit and protection not only of the parties to the contract but for the benefit of parties who furnished material to Meredith. Under the provisions of this contract persons who furnished material to Meredith and notified the guaranty company of their claims at a time when it had or thereafter had in its hands sufficient funds to pay them, could proceed directly against it to collect the amount of these claims. The right of the materialmen under the circumstances stated to proceed directly against the guaranty company on the stipulations of the contract between it, Meredith and the National Surety Co., is well settled in the cases of Albin Co. v. Com., 128 Ky. 295; Matheny v. Chester, 141 Ky. 790, and Morrison v. Payton, 31 Ky. L. R. 992.

These material things being established, it becomes at once apparent that the guaranty company has no meritorious ground on which to secure a reversal of either of the judgments against it. It seeks, however, a reversal on several strictly technical grounds, some of which we will briefly notice.

It appears that Gauvreau, the general agent of the guaranty company, and who had complete charge of all matters connected with these street improvement contracts, absconded, after misappropriating large sums of money entrusted to his custody as its general agent in the state. And it might here be remarked that all this litigation appears to be the result of the defalcation of Gauvreau. If he had been faithful to his trust as the agent of the guaranty company, we take it for granted these claims would have been paid when they were presented, as they should and could have been. But in place of using the money to pay these claims, Gauvreau converted it to his own use, and the guaranty company is now endeavoring to shift the burden of the loss sustained on account of the defalcation of its agent to the shoulders of the Peebles Co. and Speed & Co., upon the ground that it merely occupied towards these creditors the relation of a trustee or bailee, and having exercised care in the selection and supervision of Gauvreau, who was entrusted with the funds or securities that should have been used in paying these creditors, it cannot be held responsible for his misappropriation of these funds or securities.

We have been furnished by counsel for the guaranty company with an interesting brief on the subject of the rights and liabilities of bailees, trustees and stake-holders, but being of the opinion that the guaranty company was neither a stake-holder, trustee nor bailee, we shall not extend this opinion in discussing this feature of the case. So far as these creditors are concerned, the guaranty company cannot excuse itself from paying their claims on the ground that its agent misappropriated the funds or securities that should have been used to pay their demands. The apportionment warrants issued by the city were made payable directly to it, and if one of its agents converted these warrants, or the money realized on them, to his own use, that is a matter entirely between the guaranty company and its agent. It does not concern in any way the creditors whose claims the guaranty company was obliged to pay upon notice of their existence at a time when it had in its hands or thereafter had sufficient funds to pay them.

Along this line the further argument is made that as the funds were garnisheed in its hands by Speed & Co. and the Peebles Co., it, as garnishee, was not an insurer that the funds in its hands would not be misappropriated by Gauvreau, its agent, and, therefore, it should not be held liable as garnishee for his misconduct. Possibly a mere garnishee, if he exercised reasonable care in taking care of the funds garnisheed in his hands, would not be liable to an attaching creditor if the funds were lost by the wrongdoing of some agent in whose custody they were placed; but for the reasons stated we shall not enter into a discussion of the duty or liability the garnishee owes in safeguarding funds attached in his hands.

The further argument is made that the writing given by Meredith to the Guaranty company, authorizing it to pay to the Peebles Co., $3,980.98, was not a sufficient assignment by Meredith of the funds in the hands of the guaranty company due him under his contract with it. But we think there can be no doubt about its sufficiency in every respect as notice to the guaranty company of the claim that the Peebles Co. held against Meredith and the authority of Meredith to pay this claim out of the proceeds of apportionment warrants payable to it, and this was all the notice to which it was entitled. It could not read this assignment without understanding the

amount of the Peebles Co. claim, the direction by Meredith to pay it, and the duty it was under to pay it.

There is also a suggestion that the Peebles Co. should have been required to elect whether it would prosecute its claim on the assignment given by Meredith or on its rights growing out of the garnishment of the funds in the hands of the guaranty company. The Peebles Co. had the right to prosecute both of these remedies, and we are unable to perceive how the fact that it resorted to both of them prejudiced in any manner the rights of the guaranty company. Both remedies sought the same end—the collection of the debt which the guaranty company was under a duty to pay.

The judgments in favor of the Peebles Co. as well as Speed & Co. are also attacked as erroneous upon the ground that there was no judgment against the administrator of Meredith who it appears was before the court. So far as the claim of the Peebles Co. is concerned, it was not necessary that Meredith should have been made a party to the suit. The Peebles Co. could have proceeded against the guaranty company alone on its acceptance of the Meredith assignment. Whether the administrator of Meredith was a necessary party to the suit of Speed & Co., will be considered when the objections specially urged against this judgment are considered.

In the suit of Speed & Co. against Meredith to have judgment on its claim, the guaranty company was summoned as a garnishee, and there was in proper form and manner attached in its hands any money, choses in action or evidences of debt owned by Meredith or in which he had an interest.

In November, 1911, the guaranty company, as garnishee, filed an answer which, although denying that it held in its hands any property of Meredith, admitted that it did have warrants and funds, but averred that they were subject to prior equities of the National Surety Co. and itself.

Subsequent to this, amended petitions were filed by Speed & Co. and amended answers filed by the guaranty company, and finally, in May, 1914, Speed & Co. filed an amended pleading against Meredith and the guaranty company setting out specifically certain sums that the guaranty company had in its possession that should be subjected to the payment of its claim against Meredith,

and on this pleading summons was executed on the guaranty company.

To this pleading the guaranty company, in June, 1914, filed its answer, in which it is admitted that there was in the hands of its agent, Gauvreau, in July, 1911, certain sums of money that had been collected on warrants.

In February, 1915, the court, after finding the amount of cash that was in the hands of the guaranty company when the attachment of Speed & Co. was executed, and the amount of uncollected city warrants in its hands on that date, adjudged Speed & Co. a lien junior to the lien of the Peebles Co. on this cash and these warrants for the amount of its claim, and directed the guaranty company to pay to Speed & Co. certain sums specified in the judgment. It was further directed to deliver to the receiver of the Jefferson circuit court apportionment warrants upon which it was adjudged Speed & Co. had a lien. After this, on motion of Speed & Co., a rule was issued against the guaranty company requiring it to show cause why it had not turned over to the receiver the warrants it was directed to deliver to him.

Afterwards, Speed & Co. filed an amended petition against the guaranty company setting out the steps that had been taken and what had been done, and that the guaranty company had failed to deliver to the receiver the warrants that it was directed to deliver to him, and it prayed judgment against it for the balance due on its debt, with costs. Thereafter, in December, 1915, the guaranty company having failed to comply with the former orders of the court, a judgment was given against it in favor of Speed & Co. for the amount of its debt, interest and costs.

On this appeal the guaranty company complains of the judgments of February, 1915, and December, 1915, insisting that both of them are radically wrong.

Keeping in mind the fact that the guaranty company was the real contractor with the city, and that Meredith was merely a subcontractor engaged by it to do the work under a contract by which all the warrants were to be collected by it and it was to advance to Meredith such money as he needed in the prosecution of the work, and retain as security for any advance made to him the warrants issued to it, and the further fact that in the

contract with the National Surety Co. as the surety of Meredith, it was stipulated that if at any time during the progress of the work there should come to the notice of the guaranty company the fact that any claim for labor or material was unpaid, it should withhold from Meredith any money due or to become due to him under the contract made with him until the unpaid claims were paid, it is clear that Speed & Co. might have proceeded directly against the guaranty company to recover the amount of its claim, and equally clear that, if in such a suit it appeared that the guaranty company had notice of such a claim at a time when it had funds in its hands sufficient to pay it, or if it appeared that after notice of the claim funds sufficient to pay it came into its hands, Speed & Co. could have taken a judgment against it for the amount of its claim.    Speed & Co., however, proceeded in the first instance against the guaranty company as a garnishee, although afterwards, upon its failure to make proper disclosures and obey orders and judgments of the court, it was made a defendant and served with process. And we, therefore, think that on this amended petition judgment properly went against it.

Having this view of the matter, it does not seem necessary to discuss the questions raised by counsel for the guaranty company as to the liability of a garnishee. In the first place, the guaranty company does not occupy in this action the favorable attitude of an ordinary garnishee, and in the second place, having failed as garnishee to obey the orders of the court, it was proper to give a judgment against it after it had been made a defendant.

There is a further contention that Speed & Co. was guilty of such laches in the prosecution of its claim as to relieve the guaranty company of liability to it. This contention is entirely without merit. The guaranty company when it had notice of the claim of Speed & Co. in July, 1911, should have paid it. If Speed & Co. did not prosecute its claim with diligence, we are unable to perceive how the rights of the guaranty company were prejudiced by this when the guaranty company at any time could have paid the claim.    There is no pretense that the claim of Speed & Co. was barred by limitation, and when a creditor has a valid claim, as Speed & Co. had, he will not lose it merely because he fails to prosecute a suit for its enforcement with the diligence he perhaps should have exercised.

There is a further suggestion that it was error to give judgment against the guaranty company before there was a judgment against the administrator of Meredith. As there is no contention that the claim of Speed & Co. against Meredith is not a just claim, and in view of the fact that the guaranty company was liable for its payment, we are unable to perceive how it was prejudiced by the failure of Speed & Co. to take a judgment against the administrator of Meredith. As before stated, Speed & Co. could have proceeded against the guaranty company alone and have obtained a judgment against it for the amount of its debt.

On the cross-appeal of the Peebles Co., it is urged in its behalf that the judgment of the lower court was erroneous in not allowing it interest on its claim from the date of the assignment by Meredith. In view of what has been said as to the liability of the guaranty company for the full amount of this claim of the Peebles Co., there should have been a judgment in its favor for the amount of its debt, with interest thereon from March 29, 1911, until paid, and its costs.

Wherefore, on the appeals of the Citizens Trust & Guaranty Co., the judgments in favor of the Peebles Paving Brick Co. and J. B. Speed & Co. are affirmed, and on the cross-appeal of the Peebles Paving Brick Co. the judgment is reversed for the error indicated.