## WOODARD v. EMERSON BROS. & ROGERS. (No. 6688.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 8, 1922.)

1. Waters and water courses ⊚⟿254—Contract excusing defendants from liability for failure to furnish water construed.

Under contract relieving defendants from liability for failure to furnish plaintiff with water for irrigation purposes if "due to some act of God or something over which parties of the first part (defendants) have no control," the "something over which" defendants "have no control" must be something similar to an act of God over which no human being could exercise control.

2. Waters and water courses ⊚⟿254—Power company's failure to furnish power held not to have excused defendants' failure to furnish plaintiff with water.

Defendants, who had contracted to supply plaintiff with water for irrigation purposes under contract absolving them from liability for failure to furnish water "if the failure is due to some act of God or something over which parties of the first part [defendants] have no control," held liable for failure to supply plaintiff with water, though inability to so do was due to failure of electric power company, over which the defendants had no control, to furnish defendants with power wherewith to run their pumps, where defendants did not require power company to give bond to insure supply of power and ·did not by mandamus seek to require the company to furnish them power.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by Mrs. R. P. Woodard against Emerson Bros. & Rogers. Judgment for defendants, and plaintiff appeals. Affirmed in part, and reversed in part.

John L. Dannelley, of Laredo, for appellant.

Hill & Hill, of Laredo, for appellees.

FLY, C. J. This is an agreed case for presentation, under the statute, to this court. The facts as agreed to are that Mrs. Woodard instituted this suit for herself and Mrs. Jennie Devine, who withdrew from the suit, to recover damages from appellees, a partnership composed of T. J. and G. C. Emerson and O. W. Rogers, arising out of a failure to furnish water for an onion crop in the spring of 1920. The appellees had entered into a contract with appellant and Mrs. Devine, binding themselves to furnish, for $1.23 an hour, water sufficient to irrigate 45 acres of land on porcion No. 30, known as Moreno farm, and 50 acres, a part of porcion 30, known as the Julian Granados tract or farm. The case in the lower court turned upon, and caused judgment to be rendered for appellees on, the following clause of the contract:

"It is agreed and understood that parties of the first part [appellees] are not to be liable for any damages to crop or crops by reason of failure to get water when needed, if the failure is due to some act of God or something over which parties of the first part have no control; but parties of the first part agree and obligate themselves to use the best of their efforts to keep said pumps in good shape and running order."

The following facts were proven:

"Mrs. Woodard, plaintiff, had 35 acres in onions which she was raising for the market of 1920; that she properly cultivated the crop; that defendants, Emerson Bros. & Rogers, executed the above contract, but failed to furnish her with sufficient water, and that, if she had had sufficient water, her crop would have brought her the net sum of $10,430.90 more than she received for it; that Mrs. Woodard's 35 acres were connected with the pumps controlled and operated by defendants by proper ditches and laterals, and that she had no other means of obtaining water for irrigation than from defendants' pumps; that it was necessary to irrigate a crop of onions in order to grow and mature the same. Defendants proved that their pumps were propelled by electricity, and for such service were connected with the power plant of the Laredo Electric & Railway Company, of the city of Laredo; that defendants had no other means of furnishing water except from these electrically driven pumps, and had no way of securing electric current to propel same except from the said power company, all of which was known by Mrs. Woodard at the time the water contract was entered into; that prior to making the contract with the plaintiff defendants, through one of the partners, T. J. Emerson, asked the manager of the power company if they, the power company, would be able to furnish to him sufficient current to operate the pumps for the irrigation of the farm covered by ditches and laterals, which included the land farmed by Mrs. Woodard, and was told by said manager that they would; that none of the partnership were connected with the management or control of the power plant, which fact was known to Mrs. Woodard; that the power company failed to furnish defendants, Emerson Bros. & Rogers, at all times' when demanded, with current to operate the pumps, and for this reason, and this alone, defendants failed to furnish Mrs. Woodard with sufficient water; that Emerson Bros. & Rogers, through T. J. Emerson, one of the partnership, did all in their power to induce and persuade the power company to furnish the current, but it, the power company, sometimes failed to do so, on account of breakdowns at their power plant and the delays incident to repairs."

The only issue presented to this court is as to whether the failure of the Laredo Electric & Railway Company to furnish power to run the pumps of appellees was "something over which parties of the first part

(appellees) have no control" and absolved them from liability for a failure to furnish water to appellant.

[1, 2] Under the terms of the contract "some act of God" is placed upon the same plane and footing as "something" over which appellees had no control. That is "something" just as potent and just as invincible as a stroke of lightning or a great flood that destroyed the plant of appellees and rendered it impossible for appellees to perform their contract to furnish water to appellant. In other words, the "something" referred to was something similar to an act of God over which no human being could exercise control. For instance, suppose some one had placed a bomb under the plant of appellees and had exploded it and destroyed the plant, that would not be an act of God, but would be "something" over which appellees had no control and would exonerate them from liability to furnish water; but suppose the employés in charge of the pumps, from time to time, failed and refused to turn on the electricity and thereby prevented appellant from receiving sufficient water, that would not be "something" beyond appellees' control. The electric light company was an agent, an employé, of appellees, and could not be classed as "something" over which appellees had "no control." The lack of control intended was something that it was impossible for appellees to exercise power and influence over, and we can easily imagine ways, whether by contract which could have been enforced or otherwise, in which appellees could have had absolute control over the electric company. It is not claimed that any adequate effort was made to obtain the necessary electricity. No suit was brought, no written contract had been made, no mandamus was applied for to compel the performance of the verbal contract, if there was one. All that was done was to exercise the powers of persuasion with the recalcitrant corporation. Persuasive eloquence might well fail with a corporation which would respond readily if urged by the iron hand of the law. No effort was put forth to control this agency of appellees, for mere language cannot be classed with efforts at control.

No material practical effort was shown to have been made to compel performance of the contract. The evidence fails to show that it was contemplated by the parties that the acts of an agent or third party would, under the terms of the contract, excuse appellees from performance. It is true that Mrs. Woodard knew that the Laredo Electric Railway Company might supply appellees with power, but there is nothing to indicate that she contracted with the knowledge that a company, charged with the duty of furnishing lights for a city and power to run street cars, would so persistently, "on account of breakdowns at their power plant,"

fail and refuse to furnish power for the pumps as to cut off all water supply. Doubtless appellant knew that appellees employed help to keep the pumps going, but it would be an absurdity to hold that she by that knowledge was placed at the mercy of appellees if the employé should die or quit their service. The hypothesis that appellant made the contract with the intent that she, and she alone, should suffer for a failure of an agency employed by appellees to perform its duty, will not be entertained. The facts agreed to utterly fail to show that appellees used adequate means to compel its agent and servant to furnish the power which it "sometimes failed" to furnish. There is no fact tending to show that it sometimes failed to furnish lights for the city and power for its cars. It was only occasionally that the electric company failed to furnish power for appellees, and no such failure is shown as would account for a refusal by appellees to furnish water and cause damage to an onion crop on 35 acres of land in the sum of $10,430.90, the loss sustained by appellant.

As said in the case of Kingsville Cotton Oil Mill Co. v. Dallas Waste Mills, 210 S. W. 832:

"We do not intend to convey the impression that we think the furnishing of power by the electric company was an implied condition, or that the failure to furnish such power by the electric company rendered performance of the contract by appellant impossible. Upon the failure of such power it became appellant's duty to substitute other power or pay the damages incident to a breach, since there is nothing in the contract indicating that the power with which it operated its mill would likely fail."

Appellees cannot shift their responsibility from their shoulders to those of its agent, and cause appellant to suffer by the defalcation of such agent. Trust Co. v. Paving Co., 174 Ky. 439, 192 S. W. 508. If it had been contracted that appellees should be excused from performance by reason of breakage in its machinery, it would have been incumbent upon appellees to have shown that they used due diligence in repairing the same, and the same duty arose as to the acts of their agent in making repairs.

In the Kentucky case of Am. Bridge Co. v. Glenmore Distilleries Co., 107 S. W. 279, the court construed a contract in which it was recited that bridge company should "not be held responsible for delays in transportation, strikes, fires, floods, storms, nor for any other circumstances beyond its reasonable control," and the company sought to excuse a breach of the contract because it was unable to get material. The court held:

"Under the familiar rule of ejusdem generis, the general language following the specific enunciation of the causes which prevented the appellant from being responsible for nonperformance of its contract within the stipulated

time must be limited to include causes similar to those specifically set out; and, under this rule, we think it clear that the failure of the appellant to provide material with which to carry into effect its contract was not a circumstance beyond its reasonable control. None of the specified causes for nonresponsibility could possibly be controlled by any foresight on the part of the appellant; but foresight would undoubtedly suggest, before making a contract so urgent in its nature as the one before us, that the material with which it was to be carried into effect should have been secured in advance, at least, foresight and diligence would have secured the material in advance, and therefore the failure to exercise these cannot be said to be a cause for nonfulfillment beyond the reasonable control of the appellant."

Appellees in the instant case knew that appellant was about to engage in a farming enterprise which involved the expenditure of large sums of money and the success of which was completely dependent upon irrigation. Knowing these facts, they should not have entered into a contract to furnish water, and thereby cause appellant to enter in an enterprise which would be utterly ruined by a breach of the contract. Carnegie Steel Co. v. United States, 240 U. S. 156, 36 Sup. Ct. 342, 60 L. Ed. 576.

The facts agreed to in this case fail to show that the breach of the contract to furnish water arose from "something" over which appellees had no control. If they carelessly entered into some uncertain sort of parol contract with the electric company, relying upon a verbal representation made by a manager of the electric light company that the company would be able to furnish "sufficient current to operate the pumps," they should be held liable for the breach of the water contract. The facts fail to show that the electric light company ever agreed to furnish any power to appellees, and yet they entered into the water contract without providing any means for obtaining power. It was their duty to have bound the electric company so as to compel obedience to the contract, by a written contract and bond for performance, and this cannot be said to have been something over which they had no control, for without this contract they could and should have declined to enter into a contract to furnish water to appellant. The evidence shows gross negligence and a reckless disregard of the rights of appellant in the failure to make certain arrangements by which water could be obtained. There was an inexcusable breach of the water contract upon the part of appellees. The Rio Grande had the water ready to hand, appellees had the pumps, and laterals, the ditches, appellant had the land set to onions and demanded water, which was not furnished by appellees, and this failure to so furnish water is asked to be excused because a corporation with which no contract to furnish water had been made failed and refused to furnish it. The excuse is too baseless and insubstantial to deserve consideration.

The judgment will be affirmed as to Mrs. Devine, but will be reversed as between appellant and appellees, and it is the judgment of this court that appellant recover of appellees the sum of $10,430.90, and all costs in this behalf expended.