# Aetna Casualty & Surety Company v. United States Gypsum Company.

## Same v. Wheeler & Putnam Company.

(Decided March 27, 1931.)

(As Modified on Denial of Rehearing June 19, 1931.)

248

CLYDE L. MILLER and DYSARD & TINSLEY for appellant.

BROWNING & REED and B. O. BECKER for appellee United States Gypsum Co.

HAGER, PRICHARD & MALIN for appellee Wheeler & Putnam Co.

.OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The Ashland Hotel & Realty Company, the owner of the Ventura Hotel at Ashland, Ky., entered into a written contract under date of May 14, 1927, with the Ramsey & Gatlin Construction Company for the erection of an eleven story addition to the Ventura Hotel. Under date of December 19, 1927, the hotel company entered into another written contract with the construction company to repair and remodel the old hotel building. Each of the contracts required the construction company to execute bonds with surety, and the appellant became the surety on both bonds. By the terms of the bond covering the contract for the eleven story addition, the construction company as principal and the appellant as surety were held firmly bound unto the hotel company in the sum of $241,147, the condition being: "If the principal shall faithfully perform the contract on his part and fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do and shall fully reimburse and repay the owner for all outlay and expense which the owner may incur in making good any such default and shall pay all persons who have contracts directly with the principal for labor or materials, then this obligation shall be null and void. Otherwise, it shall remain in full force and effect." The

bond covering the contract for the remodeling and
repairing the old building bound the construction com-
pany and the surety in the penal sum of $77,260, and
provided that the contractor should "pay off and dis-
charge any and all mechanics' and materialmen's liens
for the work done, the labor performed or material
furnished," and further provided that, if the contractor
should faithfully perform all of the obligations on his
part "and fully indemnify and save harmless" the hotel
company "from all costs and damages which" it "may
suffer by reason of failure so to do and shall fully
reimburse and repay to" the hotel company "all outlay
and expense which" it "may incur in making good such
default, then this obligation" should "be null and void.
Otherwise it" should "remain in full force and effect."
"The contract for the remodeling work provided that
the contractor should "pay for all labor or materials
which have been contracted for under said contract."
The appellee Wheeler & Putnam Company furnished to
the contractor building materials to the extent of $1,-
234.34 for the new building, and $369.84 for the old
building, to recover for which it brought this action
against the contractor and the surety on the two bonds
above mentioned. The appellee United States Gypsum
Company furnished to the contractor building materials
used in the erection of the annex to the extent of $7,850,
receiving on account thereof from the contractor $5,-
218.91, leaving a balance of $2,631.09, to recover for
which this suit was brought against the contractor and
the surety on the bonds. From judgments in favor of
these materialmen, the surety appeals.

We are informed by brief that there is pending in
the circuit court a large number of like cases, and that
the parties have selected the two above-styled appeals as
typical of the cases and the questions involved. It also
appears from brief that a like case is now pending in the
Supreme Court of the United States, the materialmen in
that case, the Vincennes Bridge Company, having brought
its suit in the federal District Court for the Eastern
District of Kentucky, where it too recovered a judgment.
On appeal to the United States Circuit Court of Appeals,
the case was referred to the Supreme Court on this cer-
tificate: "Was the bond so far and so directly for the
benefit of the sub-contractor that it can maintain against
the surety company this action thereon?" And that is

the first question presented to us for decision on these two appeals.

This question was considered at length by us in the case of Standard Oil Co. v. National Surety Co., 234 Ky. 764, 29 S. W. (2d) 29, 30. We there said:

"We have in Kentucky two distinct lines of decision in cases of this character. If the bond, when read in connection with the contract, contains a provision obligating the contractor to pay for the material, or to compensate the laborers, it constitutes a provision for the benefit of the laborers and materialmen, upon which they are entitled to maintain an action directly against the surety. Federal Union Surety Co. v. Commonwealth, 139 Ky. 92, 129 S. W. 335; Fidelity & Deposit Co. of Maryland v. Chas. Hegewald Co., 144 Ky. 790, 139 S. W. 975; Citizens' Trust & Guaranty Co. v. Peebles Paving Brick Co., 174 Ky. 439, 192 S. W. 508; National Surety Co. v. Daviess County Planing Mill Co., 213 Ky. 670, 281 S. W. 791; Mid-Continent Petroleum Corp. v. Southern Surety Co., 225 Ky. 501, 9 S. W. (2d) 229. On the other hand, when the bond is one solely to secure performance of the contract and contains no language from which an express covenant for the benefit of third parties may be derived, an action thereon by a stranger to the contract may not be maintained. Dayton Lumber & Mfg. Co. v. New Capital Hotel, 222 Ky. 29, 299 S. W. 1063 Kentucky Rock Asphalt Co. v. Fidelity & Casualty Co. (6 C. C. A.) 37 F. (2d) 279; Owens v. Georgia Life Ins. Co., 165 Ky. 507, 177 S. W. 294. The problem presented, therefore, is the interpretation of the written instruments to ascertain whether they contain any provision for the benefit of the materialmen, of whom appellant was one. If so, the line of cases first indicated controls, and the action may be maintained; but, if the contract and accompanying bond, fairly construed, do not contain any provision for the benefit of the materialmen, the second line of cases govern. . . .

"It is argued that the distinction in the decisions depends upon the character of the subject-matter of the contract, and, when the contract concerns a public improvement, as here, it will be pre-

sumed that the bond was intended for the benefit of laborers and materialmen. It is said that they are unable to assert a lien on public property, and for that reason the bond is provided to supply the rights ordinarily given by lien laws. In amplification of the argument, it is insisted that, when the subject-matter of a contract is a private structure, the lien laws of the state afford ample remedy, and it is unnecessary to resort to a bond for their protection. But such distinction is artificial and drawn from the accidental circumstances of the cases. The true basis for the diverging decisions is found in the terms of the instruments involved. The liability of the surety is measured by the terms of his contract, and the right of the third party to sue must be derived from the document signed by the surety. . . .

"The same motive that prompted the passage of material and labor lien laws is sufficient to suggest the expediency of a surety contract for the benefit of those who perform labor or furnish material. A private owner may well desire to be free from the vexation of claims or suits, and to that end may require a bond to protect him against vexation as well as liability. It is conceivable that a private owner might wish not to have upon his property a structure composed of materials or erected by labor not paid for by the contractor. So, if the contract is sufficient in its terms to manifest an intention that the contractor shall pay for the labor and material, it is a valid obligation and enforceable in favor of any person for whose benefit it may have been executed. Cf. Chesapeake & Ohio Ry. Co. v. Wadsworth Electric Mfg. Co., 234 Ky. 645, 29 S. W. (2d) 650, decided June 3, 1930. Nor is it accurate to say that the liability of the surety in a public contractor's bond depends upon the absence of any power to enforce a lien on public property. Allen County v. U. S. F. & G. Co., 122 Ky. 825, 93 S. W. 44, 29 Ky. Law Rep. 356. It is possible that provisions in surety bonds for the payment of third parties may have originated in a desire to protect persons whose security otherwise would be precarious; nevertheless the liability on a particular bond must be deduced from its own specific terms

construed liberally to effectuate the purpose for which it was given. National Surety Co. v. Price, 162 Ky. 632, 172 S. W. 1072.''

In the light of the foregoing excerpt, it follows that we should answer in the affirmative the question whether or not these bonds, when read in connection with the contracts, were so far and so directly for the benefit of the subcontractors that they can maintain against the surety company these actions thereon as these bonds, when read in connection with the contracts, clearly fall within that classification as set out in that excerpt unless the appellant is sound in its contention, that the only promissory part of the bonds is the agreement to pay the penal amount to the obligee, therein named, that is, the hotel company, the condition of the bond not being a covenant or promise, but merely a defeasance clause. Although this contention of the appellant was potentially present in all the cases cited in the Standard Oil Case, supra, of the class to which the instant cases belong, it does not seem to have been ever considered or even noticed in them. Indeed, it seems to have been ignored in most of the cases from foreign jurisdictions involving the right of subcontractors to sue the surety on these contractor's bonds. The argument of the appellant would substitute the shadow for the substance, the form for the content. In the case of Dooley v. Watson, 1 Gray. (Mass.) 414, the question here raised was thus decided:

''The promise of the defendant to pay the plaintiff one hundred dollars, if the defendant should fail to perform his agreement to convey the land, was merely a security for the performance of that agreement. Courts of equity have long since overruled the doctrine that a bond for the payment of money, conditioned to be void on the conveyance of land, is to be treated as a mere agreement to pay money. When the penalty appears to be intended merely as a security for the performance of the agreement, the principal object of the parties will be carried out.''

In the case of Town of Middletown v. Newport Hospital, 16 R. I. 319, 15 A. 800, 805, the court thus disposed of the problem: ''The defendant contends that the bond gives the obligor an option either to perform the condition and avoid the penalty, or to refuse performance and

incur the penalty; and that the court, therefore, will not interfere to compel performance. If the purpose was to create an option, the court must respect it; but in equity it is the purpose, not the form, which controls; and when courts find that the purpose was not to create an option, but to secure performance by means of the penalty, they will give the purpose effect. Howard v. Hopkyns, 2 Atk. 371; Chilliner v. Chilliner, 2 Ves. Sr. 528; Hardy v. Martin, 1 Cox. 26; Logan v. Wienholt, 1 Clark & F. 611; Fox v. Scard, 33 Beav. 327; Cannel v. Buckle, 2 P. Wms. 242; Ensign v. Kellogg, 4 Pick [Mass.] 1: Plunkett et al. v. Methodist Episcopal Society in North Adams et al. 3 Cush. [Mass.] 561; Dooley v. Watson, 1 Gray [Mass] 414; Waynick v. Richmond, 11 Kan. 488; French v. Macale, 2 Dru. & War, 269.''

In the case of Byram Lumber & Supply Co. v. Page et al., 109 Conn. 256, 146 A. 293, 294, where the appellant was the Aetna Casualty & Surety Company, which is the appellant in the instant case, the same contention was made as here and was thus answered by that court:

"In the first place we attach little significance to the fact that the provision here in question is stated in the 'condition' of a bond. 'An enforceable agreement may be contained in that part of a bond called the condition.' New Britain v. New Britain Telephone Co., 74 Conn. 326, 329, 50 A. 881, 1015. Of a provision contained in the condition of a bond we said in Tomlinson v. Ousatonic Water Co., 44 Conn. 99, 104: 'We think that, taking into consideration the relation of the parties, and the surrounding circumstances to which we have alluded, this clause was intended to create, and did create, an independent, original obligation on the part of the defendant; that is, independent of the rest of the agreement, and original, inasmuch as an obligation of this character had not been previously entered into in writing.' If then the provision in the bond we are considering was intended to create an enforceable obligation in those occupying such a relation as did the plaintiff to the principal contractor, that it is contained in the condition is not of consequence. See Corbin, 38 Yale Law Journal, pp. 9, 13.''

In 38 Yale Law Journal, 1 (November, 1928), appears an article by Mr. Arthur L. Corbin, one of the

special advisors of the American Law Institute, entitled, "Third Parties as Beneficiaries of Contractors' Surety Bonds." This article has been widely quoted by the courts since its appearance. In the course of that article, Mr. Corbin says:

> "The extent of this undertaking is to be determined not only by the surety's words of express promise, but also by the 'condition' of the bond. Words of 'condition' are not words of 'promise' in form; but in the case of a penal bond they must be construed to be words of promise, inasmuch as the only express words of promise are those in which payment of the penal sum is promised. The alternative seems to be between enforcing the penalty and construing the words of condition as a promise and enforcing that. The courts have adopted the latter alternative, penalties no longer being collectible.
> . . .
> "Words of 'condition' are not words of 'promise' in form; but in this class of cases it is sound policy to interpret the words liberally in favor of the third parties. In a majority of states, it is already done; and without question the surety's rate of compensation for carrying the risk is sufficiently adjusted to the law."

We regard the position taken by these authorities as sound. It was never the idea that the surety should have the option of paying the penalty of the bond and put upon the property owner the task of satisfying the various claimants and lienholders and perhaps of having to complete the job itself. The parties to the contract surely contemplated that the surety should be put to all this trouble, and that the penalty of the bond was only security for its performance of the conditions of the bond. The substance of the instrument was the agreement of the surety to do these things should the contractor fail, and equity will enforce the substance rather than the shadow or the form. We cannot accede to appellant's argument on this score.

In the United States Gypsum Company case, appellant contends that, as the hotel company executed the bond provided for by section 2478 of the Statutes, the appellee's remedy is on that bond and not on the bond of the contractor. In support of that position, it cites

Kraus v. Murphy, 38 Minn. 422, 38 N. W. 112; Bohn v. McCarthy, 29 Minn. 23, 11 N. W. 127; Phillips v. Gilbert, 101 U. S. 721, 25 L. Ed. 833. Section 2478 of the Statutes, in substance, provides that, where a mechanic's lien has been asserted against property, the owner of the property may discharge the lien by executing a bond in double the amount of the lien conditioned that the owner will satisfy any judgment which may be rendered in favor of the person asserting the lien. The right of recovery of the asserter of the lien is then transferred to the bond. It is clear to us that the owner of property by executing the bond provided for in this section of the Statutes does not thereby discharge any bond that the contractor has executed to him such as we have here. The purpose of the statute was to enable the owner of the property to substitute a bond in place of the property to satisfy any mechanic's lien that had been asserted against the property to the end that the owner could in the meantime dispose of the property as he might wish. It is simply the substitution of one form of security for another. But the contractor's bond such as we have here is executed to protect, among other things, the owner against loss by reason of the contractor's default. If the execution of the bond provided for by section 2478 of the Statutes would release the contractor from his bond, a heavy penalty would be visited upon the owner of the property for taking advantage of the statute designed to enable him to deal with his property as he might see fit provided he substituted another security for the land itself. The statute never meant to accomplish any such result. The cases relied upon by the appellant and cited above do not bear it out. The Minnesota cases deal with bonds executed by the contractor to fend off mechanics' liens. Obviously they are not in point. The United States case simply holds that, after such a bond as section 2478 provides for is executed, the materialman cannot enforce his mechanic's lien, but must look for his security to the bond. The situation presented by this case was not presented there, nor was it discussed. We are of opinion that the execution of the bond provided for by section 2478 of the Statutes did not cause a discharge of the contractor's bonds here involved.

It appears from appellant's answer that, after the general contractor had become insolvent, an arrangement was entered into between the materialmen who

held mechanics' liens on the hotel property, the holder of a first mortgage lien on the property and the hotel company, by which the property was conveyed to the Ashland National Bank as trustee for the mortgagee and the materialmen. By the trust indenture, the income of the property was to be devoted to the discharge of the claims of the mortgagee and materialmen, and, should there be a default, the property was to be sold and the proceeds divided as provided in the trust indenture between the mortgagee and the materialmen. To consummate the trust agreement, the mortgagee released its mortgage lien and the materialmen their mechanic's liens. By reason of this release, appellant claims it was discharged under the principle that an obligee cannot release a security he holds against the obligor without discharging the surety of the obligor because of the prejudice to the right of subrogation of the surety. But it is obvious that principle is not controlling here. In no event could the appellant be subrogated to the appellee's mechanic's liens. The protection of the hotel company from mechanic liens was one of the obligations of the appellant, and of course it sustained no harm when a security which, had it been assigned to it or had it been subrogated to it, it could not have enforced, was released. In the Wheeler & Putnam case, appellant also contends that the acceptance by that appellee of the benefits of the trust indenture worked a novation of its claim, and hence a release of the contractor, and hence of the appellant as surety of that obligor. But by the stipulation filed, it is agreed that the Wheeler & Putnam Company accepted the benefits of the trust indenture on the condition that it did not thereby release any claim it had against the contractor. In 20 R. C. L. 371, it is written:

"In order to constitute a novation such as will release the obligation of the original debtor to his creditor it is necessary that there should be a new and valid contract which, as agreed between the parties, extinguishes the assumed existing contract or obligation. Hence it must appear that the creditor unconditionally released the original debtor and accepted the third person in his stead; and where the parties count on the old contract as subsisting it certainly has not been novated."

It is obvious that the sole purpose of the trust indenture was to convert the statutory mechanic's liens into the contractual trust lien with its flexibility of payment. The parties simply intended to change the form of the security they held, and Wheeler & Putnam, at least, did not, as the stipulation expressly establishes, intend to release its claims against the contractor. Under these facts, there was no novation.

The next defense relied upon by the appellant to defeat a recovery in these cases is that the suits were not brought within six months from the date of the accrual of the cause of action as the bond requires. It is not denied that the suits were brought within the time prescribed by the statute of limitations, and, this being so, the contention of the appellant must fail, since any provision in a contract made in Kentucky and to be performed there, as was the case here, to abridge the periods prescribed by the statute of limitations (Ky. Stats., sec. 2514) for the bringing of suits, is against public policy and void. Union Central Life Ins. Co. v. Spinks, 119 Ky. 261, 83 S. W. 615, 84 S. W. 1160, 26 Ky. Law Rep. 1205, 27 Ky. Law Rep. 325, 69 L. R. A. 264, 7 Ann. Cas. 913.

The defense of laches is also without merit. This defense is based on the claim that, at the time the appellees' causes of action accrued, the general contractor was solvent, and that in the period during which they delayed bringing suit it became insolvent. However, the appellant at any time during this period could have paid off the appellees and other materialmen and been subrogated to their claims against the general contractor. Hence any prejudice to appellant caused by the delay of the appellees was of appellant's own working. It could have been avoided by appellant paying off the appellees. In such state of case, laches is not available as a defense. In the case of Citizens' Trust & Guaranty Co. v. Peebles Paving Brick Co., 174 Ky. 439, 192 S. W. 508, 513, where a like contention as here urged was made, we said:

> "There is a further contention that Speed & Co., was guilty of such laches in the prosecution of its claim as to relieve the guaranty company of liability to it. This contention is entirely without merit. The guaranty company when it had notice of the claim of Speed & Co., in July, 1911, should have paid it. If Speed & Co. did not prosecute its claim

with diligence, we are unable to perceive how the rights of the guaranty company were prejudiced by this when the guaranty company at any time could have paid the claim. There is no pretense that the claim of Speed & Co. was barred by limitation, and when a creditor has a valid claim as Speed & Co. had, he will not lose it merely because he fails to prosecute a suit for its enforcement with the diligence he perhaps should have exercised.''

Our conclusion therefore is that the lower court correctly adjudged in both appeals, and its judgments are affirmed.

Whole court sitting.