## Swope et al. v. Central Greyhound Lines.

Feb. 21, 1939.

ROBERT HUBBARD for appellants.

WOODWARD, DAWSON & HOBSON and R. W. KEENON for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This suit, in some respects, is a continuation and an outgrowth of certain phases of the litigation reported in Safety Motor Coach Company v. Maddin's Adm'x, 266 Ky. 459, 99 S. W. (2d) 183. Appellant, John C. Swope, filed this suit originally on September 28, 1935, in the Jefferson Circuit Court against Central Greyhound Lines, John M. Robsion, Tom Swope, Roger H. Swope, A. B. Rouse, trustee, and J. P. Stewart. Swope sought to recover certain sums allegedly due him under a contract executed in January, 1934, under which Central Greyhound Lines, now named Ohio Greyhound Lines, purchased certificates of convenience and necessity from Safety Motor Coach Company and Ohio Valley Coach Company. The appellants in this suit, John C. Swope, Tom Swope, Roger H. Swope, and J. P. Stewart, and John M. Robsion and others, who were lien creditors of Safety Motor Coach Company and Ohio Valley Coach Company, were parties to the contract under which Central Greyhound Lines purchased the certificates of convenience and necessity. It was provided in that contract that the payment of $20,000 for the certificate sold by the Safety Company and the $30,000.00 for the certificate sold by Ohio Valley Company should be paid to the lien creditors. Notes were executed to Robsion for his part of the purchase price, but the notes for the interests of the other parties were executed to the First National Bank of Birmingham, Alabama, trustee, for the benefit of those parties.

Appellee met its payments promptly up until the time an attachment was issued against it in the Boone circuit court on September 30, 1935. At that time there was a balance of something in excess of $7,000 due the lien creditors on the certificate purchased from the Safety Company.

Mrs. E. J. Maddin, as administratrix of the estate of her deceased husband, E. J. Maddin, had obtained a default judgment in the Boone circuit court against the Safety Motor Coach Company for damages for the death of her husband. She had the attachment heretofore referred to issued against Central Greyhound Lines, claiming that the balance of the purchase price of the certificate sold by the Safety Company to appellee was due and owing to the Safety Company. Central Greyhound Lines answered that it owed the Safety Company nothing and that it held no money belonging to the Safety Company. It set forth also the contract and

conditions under which it had purchased the certificates from the Safety Company and the Ohio Valley Company. The appellants in this action were made parties to the action in the Boone circuit court. An attack was made also on the contract between Central Greyhound Lines and the Safety Company and the Ohio Valley Company on the alleged ground that it was in violation of section 201 of the Constitution.

In the cases reported in 266 Ky. 459, 99 S. W. (2d) 183, it was pointed out that the mortgages held by the Swopes, Robsion, Stewart and Rouse, not having been attacked, were still valid and enforceable liens; and that this would be true also, even if the invalidity of the contract for the purchase of the certificates by the Central Greyhound Lines be conceded. It was also pointed out that the trial court improperly sustained the attachment in favor of Mrs. Maddin, administratrix, and that it erred in decreeing that her lien on the balance of the purchase price of the certificate, which was still in the hands of Central Greyhound Lines, was superior to the mortgages which the Central Greyhound Lines had agreed to pay.

In August, 1936, and prior to the time the Maddin case was decided (November 17, 1936), the trial judge of the Boone circuit court directed that appellee pay the balance due for the purchase of the certificate from Safety Motor Coach Company to a receiver in that court. Appellee objected to this payment, but was required to pay over the money under a rule. Following the time of the attachment, checks for the monthly payments were drawn by appellee, and, according to its contention, they were held by its attorney in order to avoid paying the money into the Boone circuit court. Appellee insists that it was agreed between it and appellants that, if the payments were so withheld, no interest would be charged appellee thereon. Appellants insist, however, that appellee agreed not to pay the money into the Boone circuit court, and also that it would appeal from the order of that court sustaining the attachment. Appellee did file a cross appeal after an appeal was filed by the Swopes, and it attempted to have the case advanced. In any event an appeal was prosecuted in this Court from the judgments in the Boone circuit court, and it was not until it was required to do so under a rule that appellee paid the money into that court. Furthermore, judgment was not finally en-

tered in the Boone circuit court until November, 1937, even though our opinion in the Maddin cases was handed down November 17, 1936.

It was directed in that judgment that the attachment against Central Greyhound Lines be discharged, and that the funds in the hands of the receiver be held by him subject to further order of the Jefferson Circuit Court, Common Pleas Branch, Third Division, in the case of John C. Swope v. Central Greyhound Lines, et al. The judgment also set forth that, by agreement of counsel for defendants, the costs of that action were adjudged against them, Safety Motor Coach Company, Ohio Valley Coach Company, John C. Swope, R. H. Swope, Tom Swope and J. P. Stewart.

Immediately thereafter cross petitions were filed in the Jefferson circuit court by J. P. Stewart and Tom Swope against the Central Greyhound Lines. The issues were joined and the cause was submitted to the commissioner, who, after hearing proof, submitted his report and recommendations to the court as to the balance, including interest, due under the contract of 1934 from Central Greyhound Lines to John C. Swope, Tom Swope, Roger H. Swope and J. P. Stewart. The commissioner found that (1) the sum of $7,019.05 had been paid by the appellee into the hands of the receiver of the Boone circuit court; (2) there remained in the hands of the First National Bank of Birmingham, trustee, $500.25; and (3) there remained in the hands of R. W. Keenon, attorney for appellee, the sum of $244.70; thus making a total of $7,764 available for application on appellants' claims. The commissioner also found that the following sums, including interest to December 2, 1937, were due: John C. Swope, $4,871.43; J. P. Stewart, $385.25; Roger H. Swope, $2,961.29; Tom Swope $367.71; Fidelity & Columbia Trust Company $109 (due from claim of Tom Swope, but not included in the $367.71 item), making a total of $8,694.68. The commissioner concluded that there was a balance of $931.73 due from the Central Greyhound Lines to which should be added his fee of $75.

Appellee filed a number of exceptions to the commissioner's report, most of which were sustained by the trial judge in his judgment entered December 3, 1937. These objections were directed toward the recommendations of the commissioner (1) that interest be allowed on the balance due for the purchase of the cer-

tificates from the Safety Motor Coach Company after the payments became due and the money was paid over to the receiver of the Boone circuit court; (2) that they took into consideration certain items due the Ohio Valley Coach Company, which company was not a party to this suit; and (3) because they failed properly to credit certain trade accounts and interline ticket accounts. Appellee also objected to the part of the report that indicated that its actions were responsible for delays in the Boone circuit court.

In addition to sustaining certain of appellee's exceptions to the commissioner's report, the trial court adjudged that the sum of $7,019.05 be paid to Robert Hubbard as attorney for John C. Swope and the cross petitioners, and that R. W. Keenon pay to Hubbard as said attorney the sum of $244.70 being held by him. It was further adjudged that Hubbard hold the funds until proper arrangements were made for delivering the notes to appellee and until the proper authorization for releasing the liens was received by him. It was further adjudged that the costs in this court and in the Boone circuit court, including the $75 fee for the commissioner, be deducted from the funds in the hands of Hubbard before the apportionment to appellants and that appellee recover from appellants its costs in this suit. Appellants have appealed from this judgment.

In urging reversal counsel for appellants states in his brief that the real question is,

"Is a garnishee defendant who owes the judgment debtor nothing, but who under a contract obligation owes money to a third party on interest bearing notes, released from liability to pay interest to said third persons and costs, because said garnishee paid money into court under an erroneous judgment of the trial court and under a judgment which was reversed?"

Appellants insist, also, that there is at least $400 principal due on the contract under which appellee purchased the certificate from Safety Motor Coach Company. It appears from our examination of the record, however, that appellee paid over to the receiver of the Boone circuit court the balance of the money adjudged to be due on the purchase contract ($7,019.05) except for the sum of $244.70 in the hands of R. W. Keenon. If an error was committed in paying the lien holders

$400 more than was due them on the purchase of the certificate from the Ohio Valley Company, it seems to us that this can be properly adjusted since there is a balance of more than $400 in the hands of the trustee, in view of the fact that appellants had substantial interests in both the Ohio Valley Company and the Safety Company.

Appellants have sought to show that appellee's actions were largely responsible for the delay in the Boone circuit court. It is our conclusion from an examination of the record, however, that appellee's actions were not such as to warrant its being charged with the delay. On the contrary, it appears to us that appellee did all that could have reasonably been expected of it in protecting the interests of appellants. In 28 C. J. page 247, section 342, it is stated that the general rule as to the charging of interest after garnishment is:

"The prevailing rule is that a garnishee is not chargeable with interest in favor of plaintiff during pendency of the proceedings, unless he has contracted to pay interest, or actually receives interest, or continues, after service of the writ, to use the money due, or wrongfully detains it, or there has been collusion or unreasonable delay on his part. In some jurisdictions, however, where a garnishee may have leave at any time to bring the debt into court, he is chargeable with interest from the time it becomes due until it is paid if he does not so relieve himself from further responsibility."

See, also, section 345, page 249, same volume, as to garnishee's liability to an assignee.

Appellants stress the case of Stockton v. Hall, 3 Ky. 160, Hardin 160, 168; in that case it was said:

"The garnishee, having notice of the assignment, by suit actually commenced against him, before he was sworn, was bound to make a disclosure to the court, as well of the assignment, as of the covenant originally given to Mullins.

"If he failed to do so, whereby judgment was rendered against him, he must be considered as the willing victim, entitled to no greater consideration, than if he had, after notice, voluntarily paid to Mullins. But if he did disclose the assignment, and the court did, notwithstanding, enter judgment against

him, such judgment was erroneous; against which the garnishee might have protected himself, by having his confession truly and at large, placed of record; whereupon he might have reversed the judgment by writ of error.''

But in the case at bar the garnishee made a full disclosure to the court, and even resisted paying the money into court until it was required to do so under a rule. Furthermore, we have noted that appellants were made parties to the action in the Boone circuit court, and also that the contract under which appellee purchased the certificates was attached. An appeal was prosecuted to this Court and appellee filed a cross appeal therein. In the case of Citizens' Trust & Guaranty Company v. Peebles Paving Brick Company, 174 Ky. 439, 192 S. W. 508, a garnishee was charged with interest on a judgment against it, but an examination of that case reveals circumstances and conditions vastly different from those in the case at bar.

While we have noted that the trial judge of the Boone circuit court erroneously directed that appellee pay the money owing on the purchase of the certificate from Safety Motor Coach Company to a receiver of that court, it is not our view that appellee should be charged with the responsibility for this error. Nor, for that matter, should it be charged with the delay in entering the final judgment in the Boone circuit court. In the case of Sanders & Walker v. Herndon, 122 Ky. 760, 93 S. W. 14, 17, 29 Ky. Law Rep. 322, 5 L. R. A., N. S., 1072, 121 Am. St. Rep. 493, it was said:

"If the garnishee does answer, and it is satisfactory to the plaintiff, the court may order the sum owing to be paid into court, or may hear proof, and from it determine the sum owing and order it so paid in, or fix the terms on which it may be held. Section 225, Civil Code of Practice; Cavanaugh v. Fried [11 Ky. 238] 3 Ky. Law Rep. 253; Smith v. Gower [3 Metc. 171], supra. Or, in an action in equity, brought pursuant to section 439, Civil Code of Practice, on a return of nulla bona for discovery of assets, debtors of the principal debtor may be made defendants; a cause of action in the latter's behalf against them being stated in the petition.''

See, also, Thacker v. Cook, Same v. Keach, 236 Ky. 159, 164, 32 S. W. (2d) 738.

It is our conclusion, therefore, that for the reasons given herein the judgment of the lower court should be and it is affirmed.