The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

AMERICAN EMPLOYERS' INS. CO. et al. v. RODDY et al.

No. 1562—5901.

Commission of Appeals of Texas, Section A.
June 9, 1932.

Will C. Thompson and Thompson, Knight, Baker & Harris, all of Dallas, Tom P. Scott, Trippet, Richey & Sheehy and Sleeper, Boynton & Kendall, all of Waco, and J. B. Talley and John B. Daniel, both of Temple, for plaintiffs in error.

A. L. Curtis, of Belton, and Walker Saulsbury and Cox & Brown, all of Temple, for defendants in error.

HARVEY, P. J.

On May 30, 1928, S. E. Roddy and wife, as parties of the first part, entered into a certain building contract with Ray Phillips, as party of the second part, under which contract the latter became bound to construct a building to be used by the Roddys as a home, on a lot in the city of Temple belonging to the Roddys. The agreed contract price of the work was $31,250, and Phillips agreed to furnish all labor and material for said work. It was provided in the building contract that the Roddys were to execute to Phillips a note of even date, for said contract price, and that same was to mature and be payable in installments as follows:

"(a) Eighty per cent of the value of the work and material actually incorporated in the building in accordance with estimates thereon by J. H. Davis, or his representative, as the parties of the first part, on every second Saturday morning after the work is begun, until the full sum of $11,500.00 has been paid;

"(b) The balance of said note, that is, $20,000.00, shall mature and be paid when said building and improvements are completed in accordance with said plans and specifications and in a manner satisfactory to the parties of the first part, the said J. H. Davis, architect, or his representative, and upon the furnishing by the party of the second part unto the parties of the first part as owners, or said J. H. Davis, as architect, or his representative, of proofs satisfactory to said owners, said Davis or his representative, that all labor and material bills incurred for labor and material entering into said work have been paid in full. * * * Said party of the second part may assign said note, together with all liens securing the same."

Contemporaneously with the execution of said building contract, the Roddys executed to Phillips a note for the contract price of $31,250, which note was made payable in installments as provided in the building contract. The note expressly refers to the building contract, and the above-quoted provisions of said contract are embodied in the note.

In the building contract the Roddys, for the purpose of securing the payment of said note, in accordance with its terms, gave a mechanic's lien on said lot and improvements. Said contract was duly filed for record on June 6, 1928, and duly recorded in the mechanic's lien records of Bell county, where said property was situated. The building contract provided that Phillips should give a bond, payable to the owners, in the sum of $15,000, conditioned that he (Phillips) "will well and truly and faithfully perform each of the covenants and conditions in this contract agreeably to said plans and specifications." In connection with the said building contract, Ray Phillips, as principal, and the American Employers' Insurance Company, as surety, executed a bond which, after reference to said building contract, provides as follows:

"Now, therefore, for the purpose of securing the said S. E. Roddy and Mrs. Dora Roddy, their heirs or assigns, in the true and faithful performance of said contract, together with all of the covenants and obligations of the said Ray Phillips, as contractor, therein set forth, and to guarantee the true and faithful performance of said contract and the payment of all claims of each and every subcontractor, workman, laborer, mechanic and furnisher of material unto the said Ray Phillips, as contractor, arising or growing out of said contract, their heirs or assigns as their interest may appear, we, the said Ray Phillips, as principal, and the other subscribers hereunto as surety acknowledge ourselves indebted to and bound to pay to the said S. E. Roddy and his wife, Mrs. Dora Roddy, owners, their heirs, executors, administrators or assigns, the sum of Fifteen Thousand Dollars ($15,000.00) for the payment of which well and truly to be made we bind ourselves, our heirs, executors and administrators, jointly and severally by these presents.

"The conditions of this bond, however, are such that if the said Ray Phillips, as contractor, shall truly and faithfully do and perform all and every the covenants and conditions of said contract herein promised by him to be done, kept and performed, and shall truly and faithfully pay all claims of each and every subcontractor, workman, laborer, mechanic and furnisher of material, growing or arising out of said contract, then and in such event this obligation is to become null and void and of no further force

or effect, otherwise to remain in full force and effect.

"This obligation or any claim arising hereon may be enforced at Temple, Texas.

"Witness our hands on this the 30th day of May, A. D. 1928."

At the time the above bond was executed, Phillips executed to the insurance company an assignment in writing, reading partly as follows:

"And for the better protection of said Corporation, the undersigned, as of the date hereof, hereby assigns and transfers and conveys to it, the said American Employers Insurance Company, all right, title and interest of the undersigned in and to all the tools, plant, equipment and materials of every nature and description that may now or hereafter be upon said work, or in, or about the site thereof, including as well all materials purchased for or chargeable to said contract which may now be in process of construction, or storage elsewhere, or in transportation to said site, hereby assigning and conveying also all rights of the undersigned in and to all subcontracts which have been or may hereafter be entered into, and the materials embraced therein, and authorizing and empowering said Corporation, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment, materials and subcontracts, and enforce, use and enjoy the possession upon the following conditions, to-wit: This assignment shall be in full force and effect, as of the date hereof, should the undersigned fail, refuse or be unable to complete the said work in accordance with the terms of the contract covered by said bond, or in event of any default on the part of the undersigned under the said contract.

"In further consideration of the execution of the said bond, the undersigned does hereby agree, as of this date, that the said American Employers Insurance Company shall, as surety on said bond, be subrogated to all rights, privileges and property of the undersigned as principal and otherwise in said contract, and does hereby assign and transfer and convey to said Corporation all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable at the time of such breach or default, or that may thereafter become due and payable to said undersigned on account of said contract, or on account of extra work and materials supplied in connection therewith, hereby agreeing that all such moneys and the proceeds of such payments and properties, shall be the sole property of the said American Employers Insurance Company, and to be by it credited upon any loan, cost, damage, charge and expense sustained or incurred by it as above under its bond or suretyship."

At the time the above instrument was ex-

ecuted, the insurance company knew that Phillips intended to assign to some one else the note hereinabove mentioned. A few days later, Phillips did execute to the City National Bank of Temple (who will hereinafter be called the bank) an assignment of said note and the lien securing it. This assignment to the bank was promptly recorded, but the prior assignment to the insurance company was never placed of record. The Roddys and the bank had no knowledge of said assignment to the insurance company until this suit was filed. While the instrument executed to the bank by Phillips purports an assignment of the entire note to the bank, the real contract between Phillips and the bank was one of purchase by the latter of only the $20,000 installment of the note, for which the bank agreed to pay, as the purchase price thereof, the sum of $20,000 as the work on the building progressed. The Roddys, a few days later, were notified of said assignment, and they agreed to pay said installment of the note to the bank when same became payable.

Phillips in due time began the construction of the building and proceeded therewith until October 20, 1928, when he abandoned said work, leaving same uncompleted. In the meantime the Roddys had made progress payments, to Phillips, of 80 per cent. of the value of labor and material, as prescribed in the building contract and note. Said progress payments so made by the Roddys aggregated the sum of $11,500, thus leaving but the final installment of $20,000 of the note unpaid. Prior to the abandonment of the work by Phillips, the bank had paid to the latter $11,896.18 of the purchase price for this portion of the note. During this period of time, the E. Nelson Manufacturing Company, and various other parties to this suit, furnished to Phillips labor and material which went into the contruction of said building. These various claims for labor and material aggregate $13,468.08. In due time these various parties filed their claims, and gave due notice thereof to the Roddys, as prescribed by the statutes. All these claims remain unpaid. The Roddys have never paid to the bank or Phillips any part of the $20,-000 installment of the contract price of the work. When Phillips abandoned the work, Roddy requested the insurance company, the surety on the bond, to complete the work in accordance with the building contract. The insurance company refused to do this. Thereupon Roddy called upon the bank to complete said work. The bank proceeded to expend, in carrying on the work, the sum of $7,824, making, in all, the sum of $19,720.18 which the bank has paid on account of the purchase price which it had agreed with Phillips to pay for the said $20,000 portion of the note. When the bank had expended said sum of $7,824 on the work, as above stated, the work called for by the contract

still remained uncompleted, and the Roddys paid out the sum of $3,629.43 in completing the work.

This suit was brought by the E. Nelson Manufacturing Company, as plaintiff, against Phillips, who filed no answer, the Roddys, the bank, and the American Employers' Insurance Company, to recover of the said defendants, except the bank, the amount of the plaintiff's claim for labor and material furnished Phillips, as already stated, and to foreclose the lien which the plaintiff contends was fixed on said property of the Roddys by the filing of its claim and giving notice thereof as prescribed by the statutes. Various furnishers of labor and material, whose claims are of the same nature and occupy the same legal attitude as that of the plaintiff, and who seek relief in all material respects the same as that sought by the plaintiff, intervened in the suit. One firm that appears as intervener did not file its claim in the office of the county clerk, and give notice thereof, as required by the statute; but in all other material respects the claim is of the same character as the others.

The case was tried in the lower court without a jury, and the case was appealed on the conclusions of fact filed by the trial court. The trial court rendered judgment against Phillips in favor of the plaintiff and the various interveners, for the amount of their respective claims, but all other relief to them was denied. The judgment also allowed recovery by the bank, from the Roddys, of the sum of $19,720.18, on the said note, with foreclosure of the mechanic's lien given by the Roddys to secure said note. The Court of Civil Appeals reversed and rendered, in part, and affirmed, in part, the trial court's judgment. 34 S.W.(2d) 624.

■■■ The insurance company contends that the bond in question was made for the benefit of the Roddys, exclusively. It is to be observed that among the conditions contained in the defeasance clause of this bond is the payment of "all claims of each and every subcontractor, workman, laborer, mechanic and furnisher of material, growing or arising out of said contract." With reference to a builder's bond which does not relate to the construction of public improvements, the rule seems to be established in this state that, standing alone, a defeasance clause such as this is not to be regarded as implying any obligation on the part of the contractor and surety, except to indemnify the property owner against loss on account of the claims comprehended by said clause. National Bank v. Railway Co., 95 Tex. 176, 66 S. W. 203; General Bonding, etc., Co. v. Waples Lumber Co. (Tex. Civ. App.) 176 S. W. 651 (writ refused); Oak Cliff Lumber Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429. However this may be, if other language contained in the instrument disclose a promise, on the part of the contractor and his surety, to pay the claims of laborers and materialmen, and nothing to the contrary appears, the bond will be deemed to have been made for the benefit of laborers and materialmen as well as of the obligee in the bond. Fox v. Christopher & Simpson Iron Works Co. (Tex. Civ. App.) 199 S. W. 833 (writ refused). On the face of the bond in question here, there appears an express declaration of the purposes for which the bond was made. Among those declared purposes is the purpose "to guarantee * * the payment of all claims of each and every subcontractor, workman, laborer, mechanic, and furnisher of material unto the said Ray Phillips, as contractor, arising or growing out of said contract, their heirs and assigns, as their interest may appear." That this language necessarily implies an undertaking, on the part of the contractor and his surety to "guarantee" payment of all claims of the sort specified is hardly susceptible of doubt. It is equally clear that an undertaking to guarantee payment embraces a promise to pay. If there were any doubt as to the intention of the parties to extend the benefits of this obligation to the holders of claims of the sort described, that doubt would be expelled by the words, "as their interest may appear." It is thus definitely shown that the interest of such claimholders themselves was distinctly in contemplation of the parties to the bond. Clearly the bond was intended to inure to the benefit of such claimholders. The contention of the insurance company, in this respect, is overruled.

■■■ We now take up for consideration the relative rights of the bank and the insurance company respecting the unpaid balance of the contract price which the Roddys agreed to pay for said work. The note which Phillips assigned to the bank, is not a negotiable instrument. It simply evidences the obligation of the Roddys to pay the contract price of the work in accordance with the terms of the building contract from which the note arose. The rights in the claim represented by said note, which the insurance company acquired by the assignment to the company from Phillips, are superior to those which the bank acquired by virtue of the subsequent assignment. The bank, in taking the assignment from Phillips, was charged with knowledge that it was acquiring no better rights in respect of the claim than Phillips then had. Hess & Skinner Eng. Co. v. Turney, 110 Tex. 148, 216 S. W. 621; 5 Tex. Jur. p. 43. As between successive assignments, by the same assignor, of a claim secured by a lien on land, the fact that the first assignment in point of time, is not placed of record, does not affect the prior rights of the assignee which were acquired under such assignment. Article 6627 of the Statutes has no application to a situation like that. Nor does the fact

that the insurance company assented to the assignment, by Phillips, of the note in question, militate against the security rights of the company in the claim represented by said note.

■ Thus far we have considered the rights of the insurance company, in the unpaid balance of the contract price which the Roddys agreed to pay for the work, as depending upon the written assignment which Phillips executed to the company. We do not mean to imply that the rights of the company would not be substantially the same as if said assignment had never been executed. In the building contract it was expressly provided that said balance, which is represented by the $20,000 installment of the note, was to become payable when the building was completed and satisfactory proof furnished the Roddys, or the architect, that all bills for labor and material had been paid. This provision in the contract entered into and became a part of the suretyship contract, and was for the benefit of the insurance company as well as the Roddys. Ryan v. Morton, 65 Tex. 258; Bullard v. Norton, 107 Tex. 571, 182 S. W. 668; Lonergan v. Trust Co., 101 Tex. 63, 104 S. W. 1061, 106 S. W. 876, 22 L. R. A. (N. S.) 364, 130 Am. St. Rep. 803.

■ With reference to the claims of the plaintiff and those interveners who filed their claims, and gave notice thereof, as prescribed by statute, there is no reason to say that said claims are not chargeable against Roddy and his said property, to the extent authorized by statute. Roddy still holds an unexpended balance of the contract price, and the bank has but a residuary interest in such fund. The contention that Roddy, by accepting the assignment to the bank and promising to pay to the bank, at maturity, the final installment of the note, became unconditionally bound to pay said sum to the bank, cannot be sustained. The acceptance and promise imports nothing more than that said portion of the note would be paid according to the terms of the building contract and of the note itself. As already shown, payment of this part of the note depends partly on satisfactory proof being furnished Roddy, or the architect, that all bills for labor and material have been paid. The bank took the note subject to the right of the Roddys and of the insurance company to apply, or have applied, the $20,000 installment of the note to the purposes for which such fund was created, which included payment of claims for labor and material.

■ The fact that, at the instance of Roddy, the bank saw fit, after Phillips had abandoned the work, to expend, in carrying on the work, $7,824 of the purchase price which the bank had agreed to pay Phillips for the note, did not in any respect alter the original liability of Roddy under the note, or affect the rights of the insurance company, or of the Roddys, respecting the fund reserved in the hands of Roddy, or affect the standing of those claims for labor and material which were filed, and notice given in accordance with the statutes. The bank is in no better position than if it had paid this sum of $7,824 directly to Phillips, and the latter had applied same to the work the same as the bank did for him.

We recommend that the judgment of the trial court and that of the Court of Civil Appeals be reversed and set aside, and that the cause be remanded, with instructions to the trial court to enter judgment herein in accordance with this opinion.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, with instructions, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.