**WM. CAMERON & CO., Inc., et al. v. AMERICAN SURETY CO. OF NEW YORK.**

No. 1372—5959.

Commission of Appeals of Texas, Section B.

Dec. 22, 1932.

Leroy A. Smith, Bryan, Stone, Wade & Agerton, B. G. Mansell, Billingsley & Billingsley, Charles Kassel, Slay & Simon, Polk, Sansom & Terrell, McDonald & Floyd, and Hampden Spiller, all of Fort Worth, for plaintiffs in error.

Thompson & Barwise and Kelly Shannon, all of Fort Worth, for defendant in error.

RYAN, J.

This suit was brought by Wm. Cameron & Co., Inc., in the district court of Tarrant county (Acme Brick Company and others intervened, claiming the same relief, though in different amounts), to recover upon the surety bond given in connection with a contract between T. B. Ellison, owner, and Southwell & Abbott, contractors, for the construction of a warehouse in the city of Fort Worth; the American Surety Company was surety thereon for the contractors.

After the building was completed, the contract price was paid in full by the owner; the balance due thereon, when the building was completed and accepted, amounting to $6,717.80, was paid to the contractors, who deposited the same in bank for application to claims of subcontractors, materialmen, and laborers, but the money was, without the contractors' consent, appropriated to and used by the bank in payment of debts owing by the contractors to it.

The contractors, Southwell & Abbott, failed to pay Wm. Cameron & Co., Inc., $4,317.34, Miller Bros. $229.60, the Southern Ornamental Iron Works $455.54, the Acme Brick Company $2,180.32, the Builders' Material Company $47.-81, B. S. Matson $606.60, Chas. T. Davis $111.84, the North Texas Iron & Steel Company $966.86, the Fort Worth Sand & Gravel Company $579.38, and the Collinsville Manufacturing Company $1,074.77, which they owed said parties for material or labor that was furnished in the construction of said building. None of said parties filed or fixed any lien against the building in accordance with the law, nor did T. B. Ellison, the owner, have any notice within thirty days of the final payment to the contractors that said claims were not paid.

Recovery was also sought against Ellison, the owner, for the amounts of said claims and to establish a lien against the property therefor.

Ellison answered, denying liability, and by way of cross-action he sought, as trustee for plaintiff and interveners, judgment against the contractors and the surety company for the respective amounts as claimed by the plaintiff and interveners, alleging that he had taken the indemnity bond for their use and benefit, and was entitled to recover the aggregate of said sums as trustee for said named parties. He further claimed an attorneys' fee of $1,500 by reason of having been forced to employ attorneys to defend him against the suit as brought by said parties and in the prosecution of his claim as trustee against the surety company; its liability therefor being, by virtue of the provisions of the bond.

Southwell & Abbott, the contractors, alleged that they had been discharged in bankruptcy of all the claims in question here.

It was agreed on the trial that the various claims, for which recovery was sought, are correct as to amounts due and unpaid; that such claimants (except T. B. Ellison) have been paid 10 per cent. thereof, through a committee appointed by the creditors of Southwell & Abbott, in 1928; that the material or labor and material covered by said claims actually went into and became a part of the building, which is the subject-matter of this suit; that such labor and material was furnished directly to the contractors, and the dates of the furnishing thereof as stated in the several accounts are correct.

It was further agreed that Ellison completed the full payment of his contract with Southwell & Abbott, by check dated March 7, 1927, and from that date nothing further was due and owing by him to them; that he did not have notice, in accordance with law, of any of the claims now asserted, within thirty days of said final payment, but on March 10, 1927, he received a letter from the Acme Brick Company, as follows: "This is to advise you that there is owing to us for brick furnished on your building $2,194.80, same being charged to Southwell & Abbott, contractors on this building. This money is due and we are proceeding to file against the building to protect our interest," and on the same day said brick company wrote and sent to the American Surety Company its letter as follows: "This is to advise you that Southwell & Abbott owe this company $2,194.80 for brick furnished on the T. B. Ellison warehouse, and that this amount is due and unpaid. We have this day advised Mr. T. B. Ellison of this, in writing." In answer thereto, the Acme Brick Company, in due course of mail, received from the American Surety Company the following letter:

"March 17, 1927.
"In Re: Bond 589137-B
"Southwell & Abbott to T. B. Ellison, dated 11/27/26.
"Acme Brick Company, Neil P. Anderson Building, Fort Worth, Texas. Attention: Mr. J. E. Fender. We have your letter of the 10th inst. advising that Southwell & Abbott owe you $2,194.80 for brick furnished on the T. B. Ellison warehouse. This is to advise that it will be unnecessary for you to file materialman's lien against this job in order to preserve your rights under the bond of the American Surety Company covering contract of Southwell & Abbott and your account will be paid within a reasonable length of time the same as if you had filed your materialman's lien against this property, but this letter does not admit any liability not set forth in the bond.
"Yours very truly,
"Earl L. Howell, Inspector American Surety Company, of New York."

It was further agreed that the American Surety Company is and was, when said bond

1034

was executed, a corporation surety for hire, organized, among other things, for the purpose of issuing such bond.

The trial court (a jury having been waived) rendered judgment against the American Surety Company in favor of plaintiff and interveners for the respective amounts claimed by them; no recovery was had against Southwell & Abbott because of their discharge in bankruptcy; it was further adjudged that no recovery be had against Ellison, the owner, and his property was freed from any liens filed upon the same by said parties; it was further adjudged that Ellison recover from the American Surety Company the sum of $750 as a reasonable attorneys' fee for the defense of this suit against him by such subcontractors and materialmen and for the prosecution of his cross-action to clear title to his property from the cloud of the liens attempted to be filed by such subcontractors and materialmen. The surety company was, upon satisfaction of said judgment severally rendered against it, subrogated to the rights of such subcontractors and materialmen upon the claims filed by them in the bankruptcy proceedings of Southwell & Abbott, and all dividends paid in such proceedings and received by them after December 1, 1929, shall be credited upon the judgment in their favor against the surety company.

On appeal, the honorable Court of Civil Appeals at Waco held that the judgment in favor of the laborers and materialmen is erroneous, because the bond was not payable to them and did not inure to their benefit, that Ellison was not entitled to recover any attorneys' fees, reversed the same, and rendered judgment that said parties take nothing as against the surety company. 35 S.W.(2d) 217.

The contract and bond are on printed forms, and each bears the notation that it has received "the approval of the National Association of Builders' Exchanges, the Associated General Contractors of America, the Joint Conference on Construction Contracts, the National Association of Master Plumbers, the National Association of Sheet Metal Contractors of the United States, the National Electrical Contractors' Association of the United States, the National Association of Marble Dealers, the Building Granite Quarries Association, and the Building Trades Employers' Association of the City of New York." The form of contract contains the printed statement: "Copyright 1915-1918-1925 by the American Institute of Architects," and the bond contains the printed statement: "Copyright 1915-1925 by the American Institute of Architects," and both are stated to be "standard" forms.

The bond is as follows:

"Know all men: That we Southwell & Abbott, a partnership composed of William H.

Southwell and John W. Abbott, a firm of General Contractors, of Fort Worth, Texas, hereinafter called the Principal, and American Surety Company of New York, hereinafter called the Surety or Sureties, are held and firmly bound unto T. B. Ellison, of Fort Worth, Texas, hereinafter called the Owner, in the sum of Fifteen Thousand and no/100 Dollars, ($15,000.00), for the payment whereof the Principal and the Surety or Sureties bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly, by these presents.

"Whereas, the Principal has, by means of a written Agreement, dated November 24th, 1926, entered into a contract with the Owner for construction of warehouse for Ellison Furniture & Carpet Co., Fort Worth, Texas, a copy of which Agreement is by reference made a part hereof;

"Now therefore, the Condition of this Obligation is such that if the Principal shall faithfully perform the Contract on his part, and satisfy all claims and demands, incurred for the same, and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do, and shall fully reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default, and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

"Provided, however, that no suit, action or proceeding by reason of any default whatever shall be brought on this Bond after ———— months from the day on which the final payment under the Contract falls due.

"And provided, that any alterations which may be made in the terms of the Contract, or in the work to be done under it, or the giving by the Owner of any extension of time for the performance of the Contract, or any other forbearance on the part of either the Owner or the Principal to the other shall not in any way release the Principal and the Surety or Sureties, or either or any of them, their heirs, executors, administrators, successors or assigns from their liability hereunder, notice to the Surety or Sureties of any such alteration, extension or forbearance being hereby waived.

"Signed and Sealed this twenty-seventh day of November, 1926.
    "In Presence of:
        "Southwell & Abbott [Seal]
        "By Wm. H. Southwell.
    "American Surety Company of New York [Seal]
        "By C. H. Walton, Attorney in Fact.
"Countersigned by W. E. Gooch."

The contract obligated the contractors to furnish and pay for all the material and per-

form all the work shown on the "drawings and specifications" prepared by certain named architects, within a certain named time, for the sum of $28,144. Under said contract the owner had the right to require the contractors to furnish bond covering the faithful performance of the contract and the payment of all obligations arising thereunder in such form as he may prescribe.

The surety in connection with its bond and contracts had the contractors execute to it a transfer, by way of indemnity, of "all right, title and interest of the indemnitor in and to all the tools, plants, equipment and materials of every nature and description that the indemnitor may have upon the work provided for in the contract covered by said surety, or in, on, or about the site thereof, including as well materials purchased for, or chargeable to subcontractors, which may be in process of construction, on storage elsewhere, or in transportation to said site; and the indemnitor further agrees to assign and does hereby assign unto said surety all the former's rights in and to all subcontracts which may be entered into, and the material embraced therein, appertaining to said contract."

### Opinion.

■First. The conditions of the bond, viz. "that if the principal shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same, and indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do, and reimburse and repay the owner all outlay and expense which the owner may incur in making good such default," are for the benefit of and amply sufficient to protect the owner against liens and every other character of loss and expense, and it was unnecessary for his protection to add the clause "shall pay all persons who have contracts directly with the principal for labor and materials."

Unquestionably, it was intended by the inclusion of that clause to protect all such persons having contracts directly with the principal (contractor) for labor or materials; the contract exempted the owner from any contractual liability to them, and as to him the clause is unnecessary; the clause in question undoubtedly means that they are to be protected as against the principal (contractor) and created an original obligation to pay them—to secure which the bond is effective.

In other jurisdictions where identically the same form of bond was under consideration, it was held that furnishers of material to the contractor are entitled to recover thereon. Pittsburgh Plate Glass Co. v. Fidelity & Deposit Co., 193 N. C. 769, 138 S. E. 143; Mansfield Lumber Co. v. National Surety Co., 176 Ark. 1035, 5 S.W.(2d) 294; Hartford Accident Co. v. Knox Co., 150 Md. 40, 132 A. 261; Byram Lumber Co. v. Page, 109 Conn.

256, 146 A. 293; Fidelity & Deposit Co. v. Rainer, 220 Ala. 262, 125 So. 55, 57, 77 A. L. R. 13; Ætna Casualty Co. v. U. S. Gypsum Co., 239 Ky. 247, 39 S.W.(2d) 234; Ramsey & Gatlin Const. Co. v. Vincennes Bridge Co., 283 U. S. 796, 51 S. Ct. 484, 75 L. Ed. 1420; Ramsay, etc., v. Vincennes Bridge Co. (C. C. A.) 50 F.(2d) 600; Johnson Electric Co. v. Columbia C. Co., 101 Fla. 186, 133 So. 850, 77 A. L. R. 1.

■ The bond having been made for the benefit of subcontractors, workmen, laborers, mechanics, and materialmen, they may sue thereon in their own names. It is not necessary that they be named or even known when the obligation is made. H. & S. Engineering Co. v. Turney, 110 Tex. 148, 216 S. W. 621; McCown v. Schrimpf, 21 Tex. 27, 73 Am. Dec. 221; 10 Tex. Jur. p. 283.

Second. We shall now consider the right of the owner, Ellison, to recover from the surety the attorneys' fee incurred by him in, and as the result of, this litigation.

■ It is settled law in this state that, unless provided for by statute or by contract between the parties, attorneys' fees incurred by a party to litigation are not recoverable against his adversary either in an action in tort or a suit upon a contract. 13 Tex. Jur. p. 196; 11 Tex. Jur. p. 302. Counsel fees incurred in prosecuting a suit for or defending against a wrong are not ordinarily recoverable as actual damages. Closner v. Chapin (Tex. Civ. App.) 168 S. W. 370.

This is in harmony with the general rule in most of the states. 15 C. J. p. 114; Union Ind. Co. v. Vetter (C. C. A.) 40 F.(2d) 606.

We have no statute in this state providing for the recovery of attorneys' fees as damages in private contracts of this character, and must therefore find warrant, if any, for such recovery in the contract between the parties.

■ The conditions of the bond, as to the owner, are:

(a) That the contractor shall faithfully perform the contract on his part and satisfy all claims and demands incurred for the same.

It cannot be contended that under this clause recovery may be had for an attorneys' fee against the principal or surety, in addition to claims and demands for labor and material incurred in performing the contract.

■ (b) That the contractor shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure to perform the contract, and satisfy all claims and demands for the same.

It is only under this clause of the bond that the owner may claim recovery for attorneys' fees, and that involves construction of the words "cost and damage" as there used. Is an attorney's fee a "cost and damage," or either, and therefore recoverable as such?

In Moore v. Moore (Tex. Civ. App.) 52 S. W. 565, 566, a bond conditioned to "well and sufficiently indemnify, save and keep harmless * * * from all costs, charges, damages, and suits that he may incur or become liable to in consequence of the levy of said alias execution, and shall pay off and discharge all judgments, damages, and costs that may be rendered against the said * * * constable, by reason of said levy," was held not to bind sureties thereon to pay the constable's attorneys' fees for filing suit on the bond.

The same character of bond was involved in Martin-Brown Co. v. Auld (Tex. Civ. App.) 34 S. W. 1050, and Kemp Grocer Co. v. Auld (Tex. Civ. App.) 34 S. W. 1053; the court denied recovery of attorneys' fees on the ground that the bonds did not so stipulate.

In certain classes of cases, attorneys' fees are recoverable under such an indemnity clause, but this is by virtue of a statute so authorizing. For example, in forcible entry and detainer cases, the appeal bond conditioned on a prosecution of the appeal with effect and payment of all costs and damages (article 3988, Rev. Stat. 1925), an attorney's fee is recoverable but only by virtue of article 3990, Rev. Stat. 1925, as amended by Acts 1927, c. 51, § 1 (Vernon's Ann. Civ. St. art. 3990), which classes the reasonable expenses of prosecuting or defending in the county court on appeal as part of the damages. McRae v. White (Tex. Civ. App.) 42 S. W. 793. In garnishment cases, the garnishee, if discharged upon his answer, may recover an attorney's fee, by virtue of article 4100, Rev. Stat. 1925, allowing him a "reasonable compensation" in such a case, but the original defendant cannot recover an attorney's fee as actual damages under a garnishment bond protective of "all damages and costs." Heidemann v. Martinez (Tex. Civ. App.) 173 S. W. 1166; Heimsoth v. Le Seur (Tex. Civ. App.) 26 S. W. 522. And so, too, provision has been made for the recovery of attorneys' fees in suits on insurance policies and for personal services, but this is by virtue of some statute on the subject. First Texas P. Ins. Co. v. Smallwood (Tex. Civ. App.) 242 S. W. 498.

Plaintiff in error cites us to Cameron v. Barcus, 31 Tex. Civ. App. 46, 71 S. W. 423, 424; Employers' Indemnity Corporation v. Bank (Tex. Civ. App.) 299 S. W. 676, 677, Id. (Com. App.) 12 S.W.(2d) 189, and Eller v. Erwin (Tex. Civ. App.) 265 S. W. 595, as supporting his contention that attorneys' fees are comprehended under the wording of the bond in question here.

In Cameron v. Barcus, the bond was conditioned to save harmless against any claims under a certain insurance policy "and any and all damages, costs, charges, or expenses, actions or suits, whether groundless or otherwise"—clearly different from and more comprehensive than the conditions of the bond in question here.

In Employers' Indemnity Corporation v. Bank, the bond was conditioned to save harmless "against all loss, damage, liability, expense, or costs, by reason or on account of" a certain suit then pending in a federal court. In that case the Western Casualty & Guaranty Company, as principal, and Western Indemnity Company of Dallas, as surety, made said bond to the Security National Bank of Dallas for the purpose of indemnifying the bank against any loss or damage by reason of said suit. The Western Indemnity Company (surety) disposed of its assets and liabilities to the Employers' Indemnity Corporation, and ceased to do business.

After the termination of the litigation in the federal court, the Southwest National Bank (which had succeeded to all the rights of the Security National Bank, obligee in said bond) paid Messrs. Leake & Henry, its attorneys therein, the sum of $5,000 for their fee, and brought suit to recover same, together with $500 attorney's fee paid to its attorney "in the present litigation."

The Court of Civil Appeals held that the attorney's fee to Leake & Henry was a "damage" and "expense" covered by the bond, and the expense for attorneys' fees "incurred in the present suit resulted directly from the action in the federal court and is also recoverable under the bond."

The Supreme Court granted writ of error, and, on reference to the Commission of Appeals, Judge Nickels held that the fee to Leake & Henry was incurred before the execution of the bond, was a liability of the Western Indemnity Company, anteriorly incurred, that it grew out of the litigation in the federal court, and was included in the assumption of all the liabilities of said company by the Employers' Indemnity Corporation, expressly undertaken, but the recovery of the $500 item was unwarranted, and the judgments of the district court and Court of Civil Appeals were reversed to that extent; in other words, the holding was that, while liability existed as to the fee of Leake & Henry by virtue of its payment having been assumed as one of the liabilities of the Western Indemnity Company, recovery could not be had, on the bond, for the attorneys' fee of $500 incurred in a suit for the recovery of the Leake & Henry fee.

In Eller v. Erwin the facts were: Erwin indorsed the promissory note of Eller to C. C. Slaughter, in the sum of $500 (principal). To indemnify Erwin, Eller and his two brothers executed to Erwin two promissory notes, each for $2,500, with interest and the usual obligation for 10 per cent. attorney's fee. Each note contained the following clause: "But this will not become payable or negotiable, except for such amounts that J. C. Erwin

may lose through indorsement of R. C. Eller note to C. C. Slaughter." When the note to Slaughter became due, Eller was unable to pay it, and the same parties, in renewal thereof, executed a new note in the sum of $5,676.-39 payable to Slaughter. This renewal note was not paid by Eller, at its maturity, and Slaughter brought suit thereon. Eller, the principal, was hopelessly insolvent, which fact was known to Erwin as well as his attorneys, and, acting on their advice, a compromise was secured by which Erwin, on payment of $647.90 to Slaughter, was released from further liability on said note. At the consummation of the compromise, Erwin paid all the costs and expenses chargeable to him, which expense, with an attorney's fee amounting to $500 and the sum of $647.90 paid to Slaughter, aggregated $1,285, and then instituted suit to recover such amount, based upon the two indemnity promissory notes for $2,500 each, above described. The Court of Civil Appeals correctly held that the indemnity notes included such an amount in the aggregate as was necessary to have indemnified Erwin from loss. The indemnity notes fixed the same amount obligated thereby as the Slaughter note, and included the express agreement to pay attorneys' fees, conditioned that the amount of indebtedness and attorneys' fees be limited to the loss Erwin might sustain by reason of his indorsement of the note to Slaughter. Such loss, of course, means the amounts he would have to pay thereunder, including the attorneys' fee.

Those cases, with their different facts, are not authority here, nor is South Knoxville Brick Co. v. Empire State Surety Co., 126 Tenn. 402, 150 S. W. 92, Ann. Cas. 1913E, 107, where claim for counsel fees was based upon an express provision of an indemnity policy to defend suits against the assured; the company refused to do so, and the assured successfully resisted the claim there in question, employing attorneys for that purpose. The court correctly held that under the indemnity contract he could recover.

We conclude that the trial court correctly denied any recovery against Southwell & Abbott, because of their discharge in bankruptcy, and correctly rendered judgment in favor of the plaintiff and interveners against the American Surety Company for the respective amounts claimed by them, and the Court of Appeals erred in reversing said judgment in that respect; we conclude further that the trial court erred in rendering judgment in favor of T. B. Ellison against the American Surety Company for the recovery of $750 attorney's fee, and that the Court of Civil Appeals correctly reversed and rendered that portion of said judgment.

We therefore recommend that so much of the judgment of the Court of Civil Appeals as denies any said recovery for attorneys' fees be affirmed, but, in all other respects, said judgment be reversed, and that of the district court be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals in part affirmed, and in part reversed, and that of the district court in part affirmed, as recommended by the Commission of Appeals.