**STANDARD ACC. INS. CO. v. BLYTHE et al.**

**No. 9508.**

Court of Civil Appeals of Texas. San Antonio.

Feb. 13, 1935.

Rehearing Denied March 13, 1935.

Abney & Whitelaw, of Brownsville, for appellant.

M. A. Childers, Hirshberg & Powell, Theo F. Weiss, and Terrell, Davis, Hall & Clemens, all of San Antonio, C. S. Eidman, Jr., of Brownsville, J. I. Coursey, of Harlingen, Strickland, Ewers & Wilkens, of Mission, and Paul H. Brown, of Harlingen, for appellees.

SMITH, Justice.

H. W. Bush (and wife) entered into a building contract with R. P. Blythe, whereby the latter became obligated to furnish the labor and materials and make certain improvements upon the Bush home, for a stipulated consideration of $6,316.15. In pursuance of a provision in the contract, Blythe, as principal, and Standard Accident Insurance Company, as surety, executed an "indemnity" bond, payable to Bush, conditioned upon the faithful performance of the contract, as hereinafter more fully stated.

In due course Blythe, as contractor, completed the improvement to the satisfaction of Bush, who accepted it. But it developed that Blythe had failed to pay some of the subcontractors, materialmen, and laborers employed by him in performing his contract with Bush.

This litigation was precipitated by an action brought by a materialman to recover his unpaid claim against Blythe, the contractor. He sought recovery therefor not only against Blythe, but against Bush, the owner, against whom he prayed for judgment and for foreclosure of an alleged materialman's lien against the property and improvements; and against the insurance company as surety upon the bond executed by Blythe for the faithful performance of his contract with Bush.

Bush answered denying liability and resisting the materialman's prayer for a lien, asserting that the property sought to be encumbered was his homestead, and therefore exempt. He also set up a cross-action against Blythe, the contractor, and the insurance company as surety upon the latter's bond, and interpleaded all the subcontractors, materialmen, and laborers holding claims against Blythe, in connection with the contract. Those so impleaded in turn sought recovery against Bush and Blythe, and against the insurance company as surety upon the bond in question.

In paragraph 7 of the building contract, in so far as pertinent to this inquiry, the contractor agreed to provide the necessary labor and materials for the work contracted to be done; and agreed that the owner could deduct from current payments due the contractor such sums as were necessary to enable the owner to pay claims or debts for labor or materials, "for which the owner might become liable and which would be chargeable to the contractor," and, further, that if such claims were paid by the owner after the contractor was fully paid, the latter should reimburse the owner therefor. So was it provided in said paragraph that the contractor, when so requested by the owner, would furnish statements to the latter, showing amounts paid by the contractor for labor and materials, and that, before final settlement between the owner and the contractor, the latter, "if required" by the former, would furnish written releases in full from materialmen and laborers.

It was provided in paragraph 9 of the contract, in so far as pertinent here, that "the contractor shall indemnify and hold harmless the owner against loss or damage arising" from accidents, damage to property and personal injuries, and "shall at his own expense defend any and all suits arising out of personal injuries, pay off and discharge any and all judgments which may be rendered against the owner upon any cause of action arising either in contract or tort from the execution and performance of the obligation herein agreed to by the contractor. * * *"

It was provided in paragraph 14 of the contract that the contractor should furnish a bond to the owner, conditioned that "the contractor shall complete" the work according to the plans, etc., and "further conditioned that said contractor shall well and truly perform each and every obligation imposed thereby." It is conceded that the work was completed as stipulated, and the bond executed, as provided, in which the defeasance clause was as follows: "Now therefore, the conditions of the foregoing is such that if the said Principal shall well and truly and faithfully comply with all the terms, covenants and conditions of said contract on the part of the Principal, to be kept and performed according to the tenor thereof and promptly making payment when due for all labor and material entered therein, including payment to the sub-contractors, if any, and save and hold harmless the Owner of the said premises from any and all damages to property or personal injury sustained by any person in or about said premises during the said construction, then this obligation shall be null and void, otherwise to be and remain in full force and virtue of law."

The trial court found as a fact, which is not challenged here, that the form of the bond first presented to the surety for execution embraced a provision giving to subcon-

tractors, materialmen, and laborers a direct right of action against the surety for the default of the contractor in his obligations to them; that the surety refused to execute the bond in that form, whereupon that provision was stricken, and the surety then executed the instrument as so amended, and in the form herein sued upon. The court concluded as a matter of law, however, under the recited authority of Cameron & Co. v. Surety Co. (Tex. Com. App.) 55 S.W.(2d) 1032, that "the bond as finally written inured to the benefit of the sub-contractors, materialmen and laborers and that they are severally entitled to recover of the surety," and rendered judgment accordingly. We have concluded that the trial court correctly decided the case.

It is contended by the insurance company, in effect, that the bond was made for the sole protection of Bush, the owner, against the lawful claims of those employed by Blythe in the work; that the bond was not made for the protection of subcontractors, etc., in their claims against the contractor; that upon the case made the owner was not liable upon those claims; that the claimants could not assert a lien against the improved premises, conceded by all parties to be exempt therefrom, as a homestead; that as the owner was thus freed of all liability in the transaction, the obligation of the bond was thereby exhausted, and could not be invoked by subcontractors or others not parties thereto.

It will be observed from a careful scrutiny of the pertinent provisions of the contract that they relate only to materialmen's and laborers' claims "for which the owner might become liable," or claims which the owner "may be compelled to pay," or "claims against" the owner's premises; and that the owner was authorized to deduct from sums earned by the contractor only "an amount sufficient to completely indemnify the owner against such claims." It is conceded by the parties, first, that the owner could not be personally liable to the laborers and materialmen for work done and materials furnished under the contract; and, second, that the property, being a homestead, could not be subjected to the laborers' and materialmen's lien. In short, as a practical matter, the provisions afforded no protection to the owner that he could not invoke under the law without those provisions. The obligation provided for could serve no purpose, then, as between the owner and the contractor, and was therefore futile—unless, indeed, as appellees contend, it inured to the benefit of the only class which could profit by its enforcement, to wit, subcontractors, laborers, and materialmen actually performing the labor and furnishing the materials going into the improvement. It is but one step from this hypothesis to the express obligation assumed in the bond, of "promptly making payment when due for all labor and material entered therein, including payment to the sub-contractors, if any. * * *"

It is obvious, from a study of the decisions in this country, that the construction of surety bonds of this class has been substantially liberalized in favor of those furnishing labor and materials in improvements put upon real estate, and by this process of legal evolution the rule has been firmly established in this as well as other jurisdictions that when in a contract with the owner the contractor promises to pay for such labor and materials, the laborer and materialmen have a right of action upon a bond conditioned upon the faithful performance of that specific obligation. 77 A. L. R. 21, Annotation; Cameron & Co. v. Surety Co. (Tex. Com. App.) 55 S.W.(2d) 1032; American Surety Co. v. Shaw (Tex. Com. App.) 69 S.W.(2d) 47; Parker Roofing Co. v. Ætna Cas. & Surety Co. (Tex. Com. App.) 55 S.W.(2d) 508; American Employers' Ins. Co. v. Roddy (Tex. Com. App.) 51 S.W.(2d) 280.

It does not appear that any useful purpose could be served by entering into a lengthy history of the evolution of decision upon the question presented. It is probable that the present rule was first firmly established in this state, with the approval of our Supreme Court, in Mosher Mfg. Co. v. Equitable Surety Co., 229 S. W. 318, 320, in a clear and forceful opinion by Judge Spencer, then of the Commission of Appeals. In that case it seems the terms of the contract and bond were identical in effect, if not in language, with those in this case. It is true that in that case the bond was one given under a statute upon a contract for a public work. Article 5160 et seq. But that decision rules in this case, nevertheless, since the county in that case, and the owner in this, were equally exempt from liability, in person or property, to materialmen, etc. In that case, as in this, the bond was to become void upon the doing of three specific things by the contractor: First, that he should faithfully comply with all the obligations assumed by him in the building contract, according to the terms thereof; second, that he would pay all claims for labor and material used in the work contracted to be done; and, third, that he would indemnify, or hold harmless, the owner from

all damages to property, or for personal injury to others. In upholding the right of subcontractors, etc., to intervene and recover directly of the surety upon such bond, it was pointed out by Judge Spencer that the "first and third clauses provide for the indemnity to the" owner, "and are entirely separate and distinct obligations from the second clause. * * * The [owner] had its protection, under the first and third clauses, regardless of the second clause, and therefore the second could afford it no protection other than that which flows as a result of the laborers and materialmen being protected. The protection thus afforded materialmen and laborers is, as has been pointed out, a sufficient justification for incorporating such a covenant in the bond." In that case, too, the court distinguishes the case of National Bank v. R. Co., 95 Tex. 176, 66 S. W. 203, here cited by appellant.

In the Mosher Case the decision seems to rest upon the idea that as the owner—the county in that case—could not be held personally liable, or its property subjected to a lien, for the claims of subcontractors, etc., the provision in the bond for the payment of such claims could afford the owner no protection except that which inured to those claimants. That protection justifies the provision in the bond.

The same idea, or theory, was expressed and was given controlling effect, in Cameron & Co. v. Surety Co., supra, in which it was said that the obligation to pay laborers, and others in that class, was not necessary to the protection of the owner, in view of other provisions in the bond, and therefore that obligation, being put in for a purpose, was held to be for the protection of those within the class named therein.

In support of its contention that the bond in this case cannot be construed as an obligation inuring to the benefit of subcontractors, etc., and authorizing them to maintain a direct action thereon, appellant cites the following cases: National Bank v. R. Co., 95 Tex. 176, 66 S. W. 203; Campbell-Root Lumber Co. v. Smith (Tex. Civ. App.) 148 S. W. 1195; General Bonding & Casualty Ins. Co. v. Waples Lumber Co. (Tex. Civ. App.) 176 S. W. 651; Oak Cliff Lumber Co. v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429; Maryland Cas. Co. v. Wilson (Tex. Civ. App.) 51 S.W.(2d) 1044; as well as American Employers' Ins. Co. v. Roddy (Tex. Com. App.) supra; Cameron & Co. v. Surety Co., supra; Parker Roofing Co. v. Ætna Cas. Co., supra. Those cases, however, serve to demonstrate the evolution towards the liberality of construction in favor of unnamed beneficiaries in such bonds, rather than to sustain appellant's contention, as will appear from an analysis of all the decisions upon the question.

In National Bank v. R. Co., supra, cited by appellant, it was recited in the face of the bond sued on that the same was "intended" as "additional security" to the owner, for the faithful performance of the building contract. The bond here sued on contains no such express declaration of the intention of the parties, which must be ascertained by implication from the language of the bond as finally executed. That difference is apparently the only distinction between the two bonds, but the Supreme Court seems to have rested the decision in that case largely upon that distinguishing feature. If that distinction may be accorded controlling influence in that case, then the decision there is not in point here. If it was not controlling, then we have gotten away from that decision by the processes of legal evolution.

In Campbell-Root Lumber Company v. Smith, supra, cited by appellant, the bond was one given under the statute, upon a contract for public work, and by its terms inured to the benefit only of such third parties as were entitled to a lien upon the property improved. Recovery was denied materialmen, etc., upon the ground that since they showed no right to such lien, they could not recover. The case is not deemed in point here.

The case of General Bonding & Casualty Ins. Co. v. Lumber Co. (Tex. Civ. App.) 176 S. W. 651, cited by appellant, seems to be neither distinguishable from, nor reconcilable with, the Mosher and other cases cited above, and must be relegated, along with others of like import (of which they are a very respectable number), to the casualties of legal evolution.

The case of Oak Cliff Lumber Company v. American Indemnity Co. (Tex. Civ. App.) 266 S. W. 429, also cited by appellant, is distinguished from the case here by the fact that in the cited case the property improved was not exempt from liens to be fixed by materialmen, etc., and the second clause, corresponding to the second clause in the bond in this and the Mosher Cases, was essential to the protection of the owner. The remaining cases cited by appellant are cited above in support of affirmance, and we will refrain from discussing them here.

The judgment is affirmed.