**EMPLOYERS LIABILITY ASSUR. CORPO-RATION, Ltd., v. TRANE CO.**

**No. 14255.**

Court of Civil Appeals of Texas.
Fort Worth.

June 20, 1941.

Rehearing Denied Sept. 5, 1941.

W. B. Handley, of Dallas, for appellant.

Ernest May and Virgil M. Blow, both of Fort Worth, for appellee.

SPEER, Justice.

Prior to December 21st, 1937, R. F. Ball Construction Company, hereinafter referred to as Ball, entered into a contract with Tarrant County, Texas, and the City of Fort Worth for the construction of a public building known as the Nurses' Home of the City-County Hospital, located in the City of Fort Worth, Tarrant County, Texas. Ball executed his bond, in connection with the contract, as provided by Article 5160, Vernon's Texas Civil Statutes.

On said December 21st, 1937, Ball entered into a written contract with Armstrong & Company, hereinafter referred to as Armstrong, subletting to Armstrong the furnishing and installation of all plumbing and plumbing fixtures.

The contract is rather lengthy, and insofar as is material to this appeal we shall refer briefly to some parts of it and quote others.

It provides that Armstrong will furnish all material and labor necessary for the completion of the work in accordance with the plans and specifications and the contract between Ball and the owners; that all of said plans and specifications, as well as the contract between Ball and the owners, were known and accessible to Armstrong. Article 3 of the contract between Ball and Armstrong (the subcontractor) reads: "The contractor (Armstrong) shall pay, promptly when due, for all labor and materials used and required, and protect the owner and R. F. Ball Construction Co. from all claims, mechanic's liens, judgments, court costs and all attorney's fees and expenses incurred on account of any failure on its part to comply with this contract."

Other provisions in the contract bind Armstrong to bear all losses sustained to Ball or the owners by reason of defective materials and workmanship in connection with that part of the original contract sublet to Armstrong; and that he would bear the pro rata part of expense for offices, telephone, heat, watchmen, ice water, tornado insurance and such like; to hold Ball harmless from suits for damages to all persons growing out of Armstrong's failure to comply with the terms of the contract. There are explicit provisions as to how, when and the amounts to be paid by Ball as the work progressed and for payment of the remainder of the contract price when the work was completed and accepted by Ball and the owners. The contract further provides:

"Article 16. The contractor (Armstrong) shall forthwith furnish to R. F. Ball Construction Company a bond guaranteeing the faithful performance of all the provisions of this contract, with surety satisfactory to R. F. Ball Construction Company, in the sum of $10,000.00 Dollars; the attached form of bond shall be executed and then become a part of this contract. R. F. Ball Construction Company may withhold payments on account until such time as such bond shall have been furnished and accepted."

The bond provided for in the contract was executed by Armstrong & Company as principal and Employers' Liability Assurance Corporation, Limited, as surety. We shall refer to the last named corporation as Surety. The conditions of the bond and its defeasance clause read, in part, as follows:

"The condition of the above obligation is such that, whereas R. F. Ball Construction Company upon the faith and credit of this bond, has entered into the foregoing contract with the above named principal:

"Now therefore, if the said principal shall well, truly and faithfully keep and perform all of the terms, provisions, covenants and conditions of the foregoing contract, including changes or additions, if such be made, * * * then this obligation shall be void; otherwise, the same shall remain in full force and virtue."

The structure was completed and accepted by the owners and Ball paid Armstrong the agreed contract price for the work sublet to him. Armstrong became insolvent and left the State and his residence was unknown when this suit was instituted. He had not paid a bill of $700 to the Trane Company for materials furnished for the completion of his contract.

The Trane Company instituted this suit against Employers' Liability Assurance Corporation, Limited, as surety on Armstrong's bond given under the conditions and circumstances above set out. The defendant (Surety on Armstrong's bond) plead the general issue. The case was tried to the court and judgment entered in favor of the Trane Company against the Surety. This appeal is from that judgment.

The sole question involved is, whether or not the Trane Company could recover against the Surety, for the value of materials furnished to Armstrong to complete his contract with Ball.

It is contended by the Surety that its obligation was one of indemnity to Ball only and did not inure to the benefit of Trane as furnisher of material. Trane contends that because of the wording of the contract between Ball and Armstrong and the provisions of the bond, the two should be read and construed as one instrument. That when thus considered, there was a direct promise by the Surety to pay for materials furnished, which provision was unnecessary for the protection of Ball, the original contractor; and that for the reason stated, the liability of the Surety was not confined to an indemnity of Ball alone, but was for the protection of such creditors as the plaintiff.

The contentions of the respective parties must be determined by the intentions of the principal and surety as expressed, and necessarily implied by the

terms of the contract and bond. We have observed above that a provision in the contract was to the effect that the attached bond should be executed and should then become a part of the contract. It would necessarily follow that the contract became a part of the bond. The two instruments, when construed as one, rendered the principal and surety jointly and severally liable for their performance.

■ The rule in this State seems to be that if the defeasance clause in a bond of a subcontractor, payable to an original contractor, contains only such provisions as are necessary to protect the latter, the obligation will be deemed one of indemnity and will not inure to the benefit of any other person. But if the provisions and obligations were not necessary for the protection of the original contractor, owner or obligee named, under certain conditions not necessary to here mention, the bond will inure to the benefit of those who furnish labor and materials. Metropolitan Casualty Ins. Co. of New York v. Texas Sand & Gravel Co., Tex.Civ.App., 68 S.W.2d 551, writ dismissed; National Bank of Cleburne v. Gulf, C. & S. F. Ry. Co., 95 Tex. 176, 66 S.W. 203; Oak Cliff Lumber Co. v. American Indemnity Co., Tex.Civ.App., 266 S.W. 429.

· In the instant case, when we construe the contract and bond as one instrument, we find that the principal (Armstrong) and the Surety made a definite promise to "pay promptly when due, for all labor and materials used and required, and protect the owner and R. F. Ball Construction Company, from all claims (etc. etc.) * * *." As we have already seen, the bond also provides that "if said principal (Armstrong) shall well, truly and faithfully keep and perform all of the terms, provisions, covenants and conditions of the foregoing contract * * * then this obligation shall be void; otherwise, the same shall remain in full force and virtue." The last quoted provision was all that was necessary for the protection of the original contractor (Ball Construction Co.). The promise by the principal and Surety to pay promptly when due, for all labor and materials used and required, was unnecessary for the protection of the original contractor, and, to our minds, strongly tends to show an intention upon the part of the obligors to pay for all such labor and materials furnished in the performance of the contract. Wm. Cameron & Co., Inc. v.

American Surety Co. of New York, Tex. Com.App., 55 S.W.2d 1032, 1035; American Employers' Ins. Co. v. Roddy, Tex.Com. App., 51 S.W.2d 280, 281.

In the Roddy case, last cited, the court had under consideration provisions of a bond very similar to those before us. In that case the conditions were that the principal should truly and faithfully do and perform all and every covenant promised by him in the contract which the bond was given to secure, and "Shall truly and faithfully pay all claims of each and every subcontractor, workman, laborer, mechanic and furnisher of material, growing or arising out of said contract, * * *." In that case it was held that since the obligation of the principal and surety disclosed an intention to pay claims of laborers and materialmen, the bond would be deemed to inure to the benefit of those who had furnished labor and materials to the principal, in aid of his performance of the contract to construct a building. It will be noted that in the case referred to the defeasance clause of the bond embraced substantially all that is to be found in the contract and bond of the instant case, when read as one transaction. A possible exception is to be found in this case, wherein there is a specific promise to pay for all labor and materials and in the case quoted from, the promise to pay was an implied one.

In the Wm. Cameron & Co. case, supra, the bond was sued on by a party who had furnished material to the contractor. The condition of the bond was shown to be that if the principal should faithfully perform the contract, and "shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void; otherwise it shall remain in full force and effect." [55 S. W.2d 1034.] It was held in that case that the guaranty in the bond for the faithful performance of the contract by the principal was amply sufficient to protect the contractor against every character of loss; that it was unnecessary for his protection to add the clause, "Shall pay all persons who have contracts directly with the principal for labor and materials." The latter class of persons were permitted, in that case, to sue and recover from the surety on the contractor's bond.

The appellant (Surety on the contractor's bond), in support of its contention that the bond was an indemnity to Ball only, relies upon Metropolitan Casualty Ins. Co. v.

Texas Sand & Gravel Co., Tex.Civ.App., 68 S.W.2d 551, writ dismissed; Standard Accident Ins. Co. v. Blythe, 130 Tex. 201, 107 S.W.2d 880, and Maryland Casualty Co. v. Dave Lehr, Inc., Tex.Civ.App., 110 S.W.2d 921. When properly analyzed, we do not believe the cases last cited announce a different rule to that in the other cases above cited and quoted from by us.

In the Sand & Gravel Co. case, supra, a subcontractor, on a public works project, executed a bond to the original contractor in which it bound the subcontractor and his surety to pay to the original contractor in a specified sum; the instrument contained this provision [68 S.W.2d 552]: "The condition of this obligation is such that if the bounded principal, L. A. Murdoch, shall in all things well and truly perform all the terms and conditions of the foregoing contract, to be by him performed and within the time mentioned therein, and shall pay all claims for labor performed and materials furnished * * *, then this obligation is to be void; otherwise to be and remain in full force and virtue." It was held that because of the language used, the bond was for the protection of the original contractor only, and persons who had furnished materials to the subcontractor were denied recovery on the bond. In that case it does not appear that there was a direct promise on the part of either the subcontractor or the surety to pay for all labor and materials furnished; but in the instant case such promise is specific as found in the contract, which by its terms became a part of the bond, and the surety, like the principal, promised to pay for the materials furnished.

In the Blythe case, supra, a similar question was before the court, based upon the provisions of the defeasance clause in a bond. In that case the provisions of the bond relied upon by one who had sold materials to a subcontractor contained a similar clause to that in the last above case discussed, to the effect that if the subcontractor should well and truly perform the terms of his contract and "promptly making payment when due for all labor and material entered therein, including payment to the sub-contractors, if any * * *, then this obligation shall be null and void, otherwise to be and remain in full force and virtue of law." [107 S.W.2d 881.] The pertinent parts of the contract for which the bond was given to secure are shown to be coverage for such claims only

as the owner "may be compelled to pay", and such as those for which the "owner might become liable". It shows the parties conceded that the owner could not be held personally liable to the laborers and materialmen for work done and materials furnished. On page 882 of 107 S.W.2d in the opinion the court said: "The question, thus narrowed down, is whether the language of the defeasance clause of the bond, *standing alone* [emphasis ours], gave a direct right of action to subcontractors, laborers, and materialmen against the surety on the contractor's bond to the owner." As we understand the question presented in the present case, we have a defeasance clause in the bond, when read in connection with the contract of which it was a part, by the terms of which there is a direct promise to pay for all labor and materials furnished in the performance of the contract. The defeasance clause in the Blythe case, supra, "standing alone" as expressed by the court, contained no such promise to pay. Our conclusions in this respect are strengthened by other expressions found in the Blythe case referred to; in discussing whether or not the defeasance clause, "standing alone", bound the sureties on the bond for labor and materials, 107 S.W.2d at page 883 the court said: "To our minds a court is not justified in reading into a condition in a defeasance clause of an indemnity bond made by a private contractor to the owner a purpose to make third parties beneficiaries thereunder. That purpose should appear elsewhere in the bond or contract."

The case of Maryland Casualty Co. v. Dave Lehr, Inc., supra, did not reach the Supreme Court, but was similar in many respects to the Blythe case and was decided upon the holdings in that case.

▮ In the case at bar, we find an obligation upon the part of the principal and surety that the former will well and truly perform the conditions of his contract with Ball and a definite promise to pay for all labor and materials furnished to the principal to enable him to carry out his contract. To our minds the obligation sued on is more than a mere indemnity to Ball, but in addition thereto, is a promise to pay for labor and materials furnished to Armstrong. It is not necessary that the promise to pay for the items should indicate the names of persons so to be paid, nor is it necessary that they be known when the obligation is entered into; but they may sue and recover on the bond in their own

names. Hess & Skinner Engineering Co. v. Turney, 110 Tex. 148, 216 S.W. 621; McCown v. Schrimpf, 21 Tex. 22, 73 Am. Dec. 221; Wm. Cameron & Co. v. American Surety Co. of New York, Tex.Com. App., 55 S.W.2d 1032, 1035.

We conclude that no error was committed by the trial court in entering judgment for the plaintiff in this case against the Surety Company on the bond and the judgment will be affirmed. It is accordingly so ordered.